**ERGON, INC., Plaintiff,**

v.

**AMOCO OIL COMPANY, Defendant.**

**No. 96–2960 G/BRE.**

United States District Court,
W.D. Tennessee,
Western Division.

March 21, 1997.

Charles G. Walker, Mary Aronov, Elizabeth E. Chance, Baker, Donelson, Bearman and Caldwell, Memphis, TN, for Plaintiffs.

Jean Markowitz, James D. Causey, Causey, Caywood, Taylor & McManus, Memphis, TN, for Defendant.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT AMOCO'S MOTION TO DISMISS AND GRANTING PLAINTIFF ERGON'S MOTION TO AMEND COMPLAINT

GIBBONS, Chief Judge.

Before the court is defendant Amoco Oil Company's ("Amoco") motion to dismiss filed on October 31, 1996 pursuant to Fed. R. Civ. Pro. 12(b)(6). In this action, plaintiff, Ergon, Inc., ("Ergon") seeks to recover from defendant the costs of cleaning up contamination caused by defendant's alleged spilling of gasoline products. Defendant contends that plaintiff has failed to state a cause of action

under any of the theories presented in the complaint.

The allegations of the complaint are straightforward. Amoco owned a tract of land on President's Island between March 16, 1971, and July 6, 1983. Using the property as a tank farm, Amoco stored gasoline and other petroleum products on the site. Ergon purchased the land from defendant in the summer of 1983 and claims to have never stored or spilled gasoline products on the land.

Ergon alleges that it discovered ground water and soil contamination for which Amoco is responsible. Ergon allegedly is working to develop an acceptable remediation plan for the cleanup of the site at the request of the State of Tennessee; however, the contamination allegedly caused by defendant is continuing in its effect on the property and will continue until the site is cleaned up. Ergon alleges that the contamination presents an imminent and substantial endangerment to health and the environment.

Ergon sues under the Resources Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6972(a), and also asserts claims of negligence, restitution, unjust enrichment, strict liability, common law contribution, and implied private causes of action and subrogation under the Tennessee Water Quality Control Act and the Tennessee Solid Waste Disposal Act. It asks the court to enter a money judgment and issue an injunction ordering Amoco to clean up and properly dispose of gasoline contamination at the site.

A Fed. R. Civ. Pro. 12(b)(6) motion requires the court to determine whether plaintiff has asserted legally cognizable claims. The court must accept as true all factual allegations in the complaint, and the motion must be denied unless it appears beyond doubt that the non-movant can prove no set of facts which would permit relief. *Windsor v. The Tennessean,* 719 F.2d 155, 158 (6th Cir.1983), *cert. denied,* 469 U.S. 826, 105 S.Ct. 105, 83 L.Ed.2d 50 (1984).

Plaintiff seeks relief under 42 U.S.C. § 6972(a)(1)(B),[1] which authorizes private actions to abate "imminent and substantial endangerments to health or the environment." Section 6972(a)(1)(B) provides that any person may commence such a civil action "against any person ... including ... any past or present owner or operator of a treatment, storage or disposal facility, who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of" the hazardous waste. Actions under this subsection require ninety (90) days notice to the Administrator of the Environmental Protection Agency, to the state in which the alleged violation occurs, and to any alleged violators prior to proceeding. 42 U.S.C. § 6972(a)(1)(B).

Amoco maintains that plaintiff's RCRA claim should be dismissed for failure to plead in the complaint that the statutorily required notice of the contamination was given to all required entities. The complaint alleges in paragraph 14 that notice was properly given to Amoco and in paragraph 10 that notice was given to the state. Amoco thus seeks dismissal because the complaint fails to allege notice to the EPA Administrator.

■ Although the United States Court of Appeals for the Sixth Circuit has ruled that compliance with RCRA's mandatory notice requirements is necessary to obtain subject matter jurisdiction, *McGregor v. Industrial Excess Landfill,* 856 F.2d 39, 43 (6th Cir. 1988) (citing *Walls v. Waste Resource Corp.,* 761 F.2d 311, 316 (6th Cir.1985)), the notice requirement should be applied flexibly "to avoid hindrance of citizen's suits through excessive formalism," *Proffitt v. Commissioners, Township of Bristol,* 754 F.2d 504, 506 (3rd Cir.1985) (overruling district court's dismissal for lack of proper notice where plaintiff had not sent written notices, but administrative agencies nevertheless had notice-in-fact). Thus, permitting Ergon to amend its complaint to plead notice to all required entities is appropriate.[2] Ergon shall amend its

---

1. Defendant's motion also addresses 42 U.S.C. § 6972(a)(1)(A), yet plaintiff does not attempt to assert a cause of action under that provision.

2. Ergon's memorandum of law in opposition to defendant's motion to dismiss is accompanied by an affidavit and registered mail return receipts verifying that it did in fact provide notice to Amoco, the state, and the Administrator. Ergon

pleadings within ten (10) days of this order to allege that it gave notice to all of the proper individuals and entities.

■ Amoco also maintains that the statute of limitations bars Ergons's citizen suit. Amoco correctly points out that RCRA does not contain a statute of limitations provision and submits that 28 U.S.C. § 2462 [3], the default statute of limitations in actions for enforcement of any civil fine or penalty, applies to citizens suits under RCRA. Amoco's argument is without merit, as the five year statute of limitations of 28 U.S.C. § 2462 plainly does not apply to actions under § 6972(a)(1)(B).

In *Meghrig v. KFC Western*, the United States Supreme Court held that 42 U.S.C. § 6972(a)(1)(B) does not authorize a private cause of action to recover the prior cost of cleaning up toxic waste that does not, at the time of suit, continue to pose an endangerment to health or the environment. —— U.S. ——, 116 S.Ct. 1251, 134 L.Ed.2d 121 (1996). Section 6972(a)(1)(B), which permits citizen suits against persons responsible for "waste which may present an imminent and substantial endangerment to health or the environment," does not authorize a suit based upon an allegation that the contaminated site posed such an endangerment at some time in the past.[4] As the Court explained, this timing restriction plainly means that an endangerment can only be "imminent" if it threatens to occur immediately. The reference to waste that "may present" imminent harm quite clearly excludes waste that no longer

presents such a danger. Thus, "it follows that § 6972(a) was designed to provide a remedy that ameliorates present or obviates the risk of future 'imminent' harms, not a remedy that compensates for past cleanup efforts." *Id.* at ——, 116 S.Ct. at 1255.

Delivering the opinion of the unanimous Court, O'Connor wrote that "other aspects of RCRA's enforcement scheme strongly support this conclusion." *Id.* First on this list of "other aspects" was RCRA's lack of a statute of limitations: "If RCRA were designed to compensate private parties for their past cleanup efforts, it would be a wholly irrational mechanism for doing so." *Id.* Because RCRA's primary purpose is to ensure the proper treatment, storage, and disposal of presently existing hazardous waste, the lack of a statute of limitations makes sense. Even though Amoco allegedly spilled petroleum more than thirteen years ago, Ergon can bring suit under § 6972(a)(1)(B) because it asserts that Amoco's alleged contamination currently poses "an imminent and substantial endangerment to health or the environment." (Complaint ¶ 15). *See also Agricultural Excess and Surplus Ins. Co. v. A.B.D. Tank & Pump Co.*, 1996 WL 515088, *2 (N.D.Ill.) (rejecting statute of limitations defense in light of Supreme Court's recent *Meghrig* opinion).

■ Defendant next seeks dismissal of Ergon's RCRA claim because the state "has commenced and is diligently prosecuting an action" against defendant.[5] Ergon responds

---

also moves to amend to include the allegation that it gave notice to the EPA Administrator. Consistent with defendant's Objection To or in the Alternative Motion to Strike Portions of the Affidavit of Paul Young, the court has not considered any of this evidence in deciding the Fed. R. Civ. Pro. 12(b)(6) motion. Rather, this evidence was considered only in granting Ergon's separate motion for leave to amend its complaint.

3. "Except as otherwise provided by Act of Congress, an action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise, shall not be entertained unless commenced within five years from the date when the claim first accrued ..." 28 U.S.C. § 2462.

4. Amoco argues that Ergon's RCRA claim will not support a recovery for sums already expend-

ed in the remediation of the alleged contamination. Ergon concedes this point, but correctly points out that it may recover sums already expended under several of the other claims asserted in the complaint.

5. RCRA contains an additional prohibition against citizen suits § 6972(b)(2)(C) states in pertinent part:

(C) No action may be commenced under subsection (a)(1)(B) of this section if the State, in order to restrain or abate acts or conditions which may have contributed or are contributing to the activities which may present the alleged endangerment—
(i) has commenced and is diligently prosecuting an action under subsection (a)(1)(B) of this section;

42 U.S.C. § 6972(a)(1)(B).

that the State of Tennessee is not "prosecuting an action" against it. In this argument, Amoco relies upon paragraph 10 of the complaint which alleges that Ergon, at the state's request, is working to develop an acceptable remediation plan. Such an allegation hardly amounts to an assertion that the state is "prosecuting an action." [6] Amoco's motion is therefore without merit.

Amoco's motion also addresses Ergon's various tort claims under Tennessee law. Amoco submits that the claims for negligence and strict liability are barred by the applicable statute of limitations. The parties agree that the three year statute of limitations of T.C.A. § 28–3–105 applies to this cause of action, but disagree as to whether the application of the "discovery rule" creates a genuine issue of material fact as to the statute of limitations issue.

■ Under the "discovery rule" applicable in tort actions, the cause of action accrues and the statute of limitations begins to run when the injury occurs or is discovered, or when in the exercise of reasonable care and diligence, it should have been discovered. *Potts v. Celotex*, 796 S.W.2d 678, 680 (Tenn. 1990) (citations omitted). "Discovery" means the discovery of the existence of a right of action, that is, facts which would support an action for tort against the tortfeasor. *Hathaway v. Middle Tennessee Anesthesiology*, 724 S.W.2d 355, 359 (Tenn.App.1986).

■ The discovery rule applies only in cases where the plaintiff does not discover and reasonably could not be expected to discover that he had a right of action. *Id.* Furthermore, the statute is tolled only during the period when the plaintiff had no knowledge at all that the wrong had occurred and, as a reasonable person, was not put on inquiry. *Hoffman v. Hospital Affiliates*, 652 S.W.2d 341, 344 (Tenn.1983). Once the suspicion of wrongdoing has arisen, the limitations period runs, and the plaintiff is under a duty to investigate with reasonable diligence.

■ Here, Amoco argues that Ergon was put on reasonable inquiry when it learned of gasoline contamination on the premises, and asserts, without evidentiary support, that Ergon discovered gasoline contamination prior to May of 1993. Ergon counters with the affidavit of Paul Young,[7] Manager of Environment and Safety with Ergon since 1986, who states that Ergon discovered the "extent of contamination" by May 1993, at which time it notified the State of Tennessee of the ground water problems at the facility.[8] The affidavit also states that, although studies were conducted between 1987 and 1995, it was not until March 1995 that Ergon learned that high concentrations of gasoline contamination came from a tank never used by Ergon to store gasoline, but rather used by Amoco for that purpose. In August 1995, a study indicated that the contamination was a mixture of gasoline and diesel. Meanwhile, in December 1994, Ergon learned "from an eye witness that Amoco regularly spilled gasoline products at the Old Amoco Tank site." This evidence raises a fact issue as to wheth-

---

**6.** Amoco offers no evidence that the state is prosecuting an action; thus, the record does not warrant treating the motion as a motion for summary judgment on this issue.

**7.** Plaintiff has submitted evidence beyond the four corners of the complaint in order to refute defendant's statute of limitations defense. Although defendant filed this motion pursuant to Fed. R. Civ. Pro. 12(b)(6), the rule provides that when the court considers matters outside the pleadings, "the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56."

Defendant's self-styled motion to dismiss contains eleven independent grounds for dismissal. The court is considering the Affidavit of Paul Young only on the statute of limitations issue. Therefore, the Rule 56(c) standard will apply to

the court's disposition of this issue only. As to the other ten grounds for dismissal, the court will still treat them under the Rule 12(b)(6) standard.

**8.** On December 12, 1996, defendant filed an objection to, or in the alternative, a motion to strike portions of the affidavit of Paul Young. Defendant contends that many statements contained in the affidavit are not based on personal knowledge. The information in Young's affidavit adequately demonstrates that he has personal knowledge regarding when Ergon learned of the nature and causes of the contamination. To the extent the affidavit refers to statements and studies of others, it is not hearsay, because it is not offered for the truth of the matter asserted. Rather, it is offered to show knowledge on the part of Ergon.

er application of the discovery rule renders the filing of this claim in August 1996 timely.

Next, Amoco moves to dismiss Ergon's claim that it is strictly liable for damage resulting from its conduct of an abnormally dangerous activity on the property known as the Old Amoco Storage Facility. (Complaint ¶ 41). Amoco correctly submits that the claim of strict liability should be dismissed because storage of petroleum products does not constitute an ultra-hazardous activity.

Tennessee courts have repeatedly rejected the applicability of strict liability to gas suppliers for escaping gas, despite the fact that the gas is poisonous, dangerous, and highly explosive. *Gross v. Nashville Gas Co.*, 608 S.W.2d 860, 872 (Tenn.App.1980); *Evens v. Young*, 196 Tenn. 118, 264 S.W.2d 577, 583 (1954); *Nashville Gas & Heating Co. v. Phillips*, 17 Tenn.App. 648, 69 S.W.2d 914, 924 (1933). The reasoning of the Tennessee courts has been uniform: although gas is poisonous and thus dangerous, it is a public necessity and its dangers are known to the public. *Gross*, 608 S.W.2d at 872 ("where the danger of a product's use is generally known, it seems clear that the product cannot be regarded as unreasonably unsafe merely because it is capable of doing harm") (quoting Prosser, Law of Torts § 99, at 660 (4th ed.1971)).

■ Where it appears that Tennessee law applies, but the highest court of Tennessee has not squarely addressed a particular issue, the court must forecast what the Tennessee Supreme Court would do if it were confronted with the same question. *Meredith v. Winter Haven*, 320 U.S. 228, 64 S.Ct. 7, 88 L.Ed. 9 (1943). The court believes that the Tennessee Supreme Court would treat escaping petroleum products as it treats escaping gas. Both are public necessities, and their potential dangers are known to the public. Liability should be determined by the failure to exercise the high degree of care commensurate with the danger. *Gross*, 608 S.W.2d at 872. Ergon's strict liability claim is, therefore, dismissed.

■ Amoco next moves to dismiss Ergon's cause of action for contribution because Tennessee has adopted a modified compara-

tive fault doctrine for tort actions. Although Amoco posits that the concept of contribution of joint tortfeasors is no longer applicable under Tennessee's new modified comparative fault regime, Amoco cites *Bervoets v. Harde Ralls Pontiac–Olds, Inc.*, in which the Tennessee Supreme Court explicitly states that the remedy of contribution survived the adoption of the comparative fault doctrine. 891 S.W.2d 905, 907 (1994). Ergon's state law claim for contribution is proper.

Ergon has also asserted an "implied cause of action" under the Tennessee Solid Waste Disposal Act, T.C.A. §§ 68–211–101—68–211–121, and the Tennessee Water Quality Control Act, T.C.A. §§ 69–3–101—69–3–131. Amoco submits that there is no implied cause of action under these statutes, nor is there any basis for allowing subrogation to the commissioner.

■ To determine whether a state statute implies a private right of action, Tennessee courts have utilized the standard created by the United States Supreme Court for locating a private right of action in a federal statute. *Buckner v. Carlton*, 623 S.W.2d 102, 105–106 (Tenn.App.1981). The touchstone of the analysis is legislative intent: whether the legislature intended in passing the statute to provide a private right of action. *Thompson v. Thompson*, 484 U.S. 174, 179, 108 S.Ct. 513, 516, 98 L.Ed.2d 512 (1988); *Northwest Airlines, Inc. v. Transport Workers Union*, 451 U.S. 77, 91, 101 S.Ct. 1571, 1580, 67 L.Ed.2d 750 (1981); *Touche Ross & Co. v. Redington*, 442 U.S. 560, 568, 99 S.Ct. 2479, 2485, 61 L.Ed.2d 82 (1979).

The United States Supreme Court has provided several factors for courts to use in determining whether a private remedy is implicit in a statute not expressly providing one:

First is the plaintiff "one of the class for whose especial benefit the statute was enacted"—that is, does the statute create a ... right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the

legislative scheme to imply such a remedy for the plaintiff?

*Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 2087–88, 45 L.Ed.2d 26 (1975). The United States Court of Appeals for the Sixth Circuit has consistently followed this test[9] in determining whether such a right of action exists. *See, e.g., Ellison v. Cocke County, Tenn.,* 63 F.3d 467, 470–71 (6th Cir.1995); *Local 3–689, Oil, Chemical & Atomic Int'l Union v. Martin Marietta Energy Sys.,* 77 F.3d 131, 134 (6th Cir.1996).

 Under the *Cort* test as interpreted by subsequent decisions, the court first looks at the language of the statute itself. *Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 16, 100 S.Ct. 242, 245–46, 62 L.Ed.2d 146 (1979); *Ellison,* 63 F.3d at 470. A court's most basic duty in construing a statute is "to ascertain and carry out the legislative intent without unduly restricting or expanding the statute's coverage beyond its intended scope." *Tennessee v. Sliger,* 846 S.W.2d 262, 263 (Tenn.1993). Therefore, unless the legislative intent to create a private right of action "can be inferred from the language of the statute, the statutory structure, or some other source, the essential predicate for implication of a private remedy simply does not exist." *Thompson,* 484 U.S. at 179, 108 S.Ct. at 516.

 Nothing in the language or statutory structure of the Tennessee Solid Waste Disposal Act suggests that the legislature intended to create a private right of action for violations of its standards. All of the enabling language in the statute begins with language such as "when the commissioner finds, upon investigation, that any provisions of this part are not being carried out," T.C.A. § 68–211–112, "the commissioner may cause the enforcement," T.C.A. § 68–211–115. The only mention of private citizens in the Act can be found in T.C.A. 68–211–113(h) which allows "any person" to file a signed complaint with the commissioner. However, once the commissioner receives the complaint from the private citizen, he has the discretion to determine whether the complaint is duplicitous or frivolous, or whether to proceed with an investigation. T.C.A. § 68–211–113(h).

As enacted, the Tennessee Solid Waste Disposal Act of 1969 did not contain section 113(h)'s private citizen reporting procedure. The Act originally provided for enforcement only by the commissioner of environment and conservation, or the solid waste disposal control board. In 1980, the legislature added T.C.A. § 68–211–113(h) to allow private citizens to file complaints with the commissioner. When the legislature made this change, it could have taken the opportunity to provide a cause of action to private citizens. It did not.

Section 117 of the Act provides that any person who fails to comply with its provisions shall pay damages to the State of Tennessee. In assessing a civil penalty, the court should consider the enforcement costs incurred by the state in investigating and enforcing violations, and in restoring the environment to its former condition. T.C.A. § 68–211–117. The statute, then, provides the explicit remedy of payment to the state coffers. The apparent purpose is to reimburse the state for expenditures it has made and to protect the taxpayers; it is not a method for plaintiff to recover expenditures that the state requires that it make.

The court is "especially reluctant" to recognize additional remedies where a statute expressly provides a remedy. *Ellison,* 63 F.3d at 470 (quoting *Transamerica Mortgage,* 444 U.S. at 19, 100 S.Ct. at 246–47). Thus, the language of the statute strongly suggests that the state legislature wanted the statute to be enforced by the state regulatory authorities.

 Next, the court asks whether the plaintiff is "such a person as is within the protection of the law and intended to be benefitted thereby." *Britton v. Claiborne County, Tenn.,* 898 S.W.2d 220, 223 (Tenn. App.1994). Ergon has not pointed to any language in the statute from which the court

---

**9.** The *Cort* test actually contains four factors. The fourth factor for consideration—whether the cause of action is traditionally delegated to state law rather than federal law—does not apply to interpretation of state statutes. Therefore, the *Buckner* court declined to apply this factor to the interpretation of a Tennessee statute.

can find the "class of beneficiaries distinguishable from the general public" it must find in order to imply a private cause of action. *Sierra Club v. Pena*, 915 F.Supp. 1381, 1390 (N.D.Ohio 1996). *See also Buckner*, 623 S.W.2d at 106–07 ("When courts have implied a private right of action from a criminal statute, the statute invariably is intended to protect a particular class of people.").[10] As Ergon itself argues, the Act is designed to protect the health and welfare of the general public. (Defendant's Mem. in Opp. to Motion to Dismiss, at 12).

 The court may also look for any external indication of legislative intent "with an eye toward determining [the legislature's] perception of the law that it was shaping." *Thompson*, 484 U.S. at 180, 108 S.Ct. at 516. Ergon would have the court deny the motion to dismiss because there is no direct legislative history which would deny a private right of action under the statute. (Defendant's Mem. in Opp. to Motion to Dismiss, at 13). The burden of establishing the existence of a private right of action, however, lies with Ergon. Plaintiff has pointed to nothing in the legislative history of the Act or the context surrounding its passage from which the court can conclude that the General Assembly intended to create a private right of action under the statute.

 Ergon further argues that a private right of action would be consistent with the purpose of the Act.[11] Although the Tennessee Solid Waste Disposal Act was designed to protect public health, safety, and welfare; to prevent the creation of nuisances; and to enhance the beauty and quality of the environment, T.C.A. § 68–211–102, it was also designed to provide a coordinated statewide solid waste disposal program. *Id.* Thus, allowing private citizens to enforce the Act may run contrary to the legislative scheme.

Although there is no Tennessee Supreme Court case on point, the Tennessee Court of Appeals for the Middle Section has addressed the issue. *Wayne County v. Solid Waste Disposal Control Bd.* points out that the Tennessee Solid Waste Disposal Act "does not explicitly provide a private right of action for persons who have been damaged as a result of a violation." 756 S.W.2d 274, 282 (Tenn.App.1988). Moreover, the *Wayne County* court concludes, there is "insufficient basis for [the court] to engraft remedies onto the Act that were not put there by the General Assembly." *Id.* The court believes that if the Tennessee Supreme Court were squarely confronted with the issue, it would adopt this language from *Wayne County* and find that no implied private right of action exists.

 The Tennessee Water Control Act is even less likely to contain an implied private right of action than the Tennessee Solid Waste Disposal Act. The structure and powers granted under the Tennessee Water Control Act are similar to the Solid Waste Disposal Act: the Water Control Act contains no provision for private actions; the language gives all enforcement power to the commissioner; damages flow into the state coffers; and the only mention of private citizens is the provision allowing complaints to be filed with the commissioner, T.C.A. § 69–3–118(a). Also, the Act is intended to protect the waters of Tennessee which are "held in public trust for the use of the people of the state." T.C.A. § 69–3–102. Thus, the statute is designed to benefit the public as a whole rather than individuals.

Additionally, section 118(b) provides that the Act shall not be construed to abridge any other statutory or common law rights that a private citizen may have against a polluter. The court reads this provision as the General Assembly's way of bifurcating the standards for public and private actions against the water polluters. The state regulatory authorities shall enforce this Act; and private citizens may continue to exercise any rights

---

10. T.C.A. § 68–211–114 does provide for criminal penalties for any willful violation of the Act.

11. "While the contamination at issue threatens the public health, it also specifically threatens Ergon in that Amoco caused the contamination to property which Ergon currently owns. As a result, the statute was enacted to prevent environmental contamination and Ergon has been directly effected by such contamination and should therefore be permitted to bring the claim." (Plaintiff's Mem. in Support of Motion to Dismiss, at 10).

they held before the enactment of the Water Control Act.

■ Ergon also claims that it has a right of subrogation in place of the commissioner under the Solid Waste Disposal Act and the Water Control Act. Thus, it seeks damages in the commissioner's place. Ergon submits no authority for this argument and has alleged no facts tending to establish a right of subrogation. The court finds no support for a right of subrogation in the text of these statutes, or in their intended purposes. Accordingly, Ergon's claims under the Tennessee Solid Waste Disposal Act and the Tennessee Water Control Act are dismissed because no private right of action or right of subrogation exists under either statute.

Finally, Amoco submits that plaintiff has failed to plead facts or the elements to support claims for unjust enrichment or restitution. Restitution is an equitable remedy, aimed at preventing unjust enrichment, which exists when any person has money or benefit which in equity and justice belongs to someone else. Restatement of Restitution, § 1.

A cause of action for restitution is defined in Section 115 of the Restatement of Restitution:

> A person who has performed the duty of another by supplying things ' or services although acting without the other's knowledge or consent, is entitled to restitution from the other if .
>
> (a) he acted unofficially and with intent to charge therefor, and .
>
> (b) the things or services supplied were immediately necessary to satisfy the requirements of public decency, health or safety.

There is no Tennessee authority adopting or rejecting § 115.[12]

■ In the complaint in the instant action, plaintiff alleges that it has begun to perform defendant's duties to clean up the property, that it intends to charge Amoco for all costs incurred, and that the cleanup is immediately necessary for the public health. Taking all these allegations as true, the court finds that plaintiff has sufficiently pled facts upon which relief can be granted. Defendant's motion to dismiss plaintiff's claim for restitution is denied.

■ When the parties use the term "unjust enrichment," they appear to use it as a synonym for quasi-contract or *quantum meruit*. In a suit for quasi-contract, recovery will be the value of what was done to benefit another where there was no enforceable promise to pay for that benefit. *Fletcher Realty v. Hayslope Properties*, 712 S.W.2d 478 (Tenn.App.1986). To prove unjust enrichment, a plaintiff must prove a benefit conferred upon the defendant by the plaintiff, appreciation by the defendant of such benefit, and acceptance of such benefit without payment of the value thereof. *Paschall's Inc. v. Dozier*, 219 Tenn. 45, 407 S.W.2d 150, 154–55 (1966).

■ Amoco claims that plaintiff has not alleged that it conferred a benefit on defendant or that defendant appreciated the benefit. Again, the court finds that Ergon's complaint does contain sufficient allegations to withstand the motion to dismiss. By remediating the contamination which was allegedly caused by Amoco, Ergon arguably confers upon Amoco a benefit of which it is aware.

For all the foregoing reasons, Amoco's motion to dismiss is granted as to Ergon's claims for strict liability and for violations of Tennessee's Solid Waste Disposal Act and Water Quality Control Act. As to all other claims, defendant's motion is denied. Ergon's motion to amend its complaint to properly plead notice is granted. Ergon shall have ten (10) days to amend its pleadings to allege that it gave notice to all of the necessary individuals and entities.

IT IS SO ORDERED.

---

**12.** The United States Supreme Court has specifically adopted this section of the Restatement into the federal common law of admiralty. *Wyandotte Transp. Co. v. United States*, 389 U.S. 191, 204, 88 S.Ct. 379, 387, 19 L.Ed.2d 407 (1967) (holding that United States has right to remove vessels which had been negligently sunken in navigable waters and to recover the cost of removal from those who caused the sinking).