IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
May 12, 2015 Session

## KIM HARDY v. TOURNAMENT PLAYERS CLUB AT SOUTHWIND, INC. D/B/A "TPC SOUTHWIND", ET AL.

**Direct Appeal from the Circuit Court for Shelby County**
**No. CT00120114     Donna M. Fields, Judge**

_____

**No. W2014-02286-COA-R9-CV – Filed July 2, 2015**
_____

BRANDON O. GIBSON, J., DISSENTING

I must respectfully dissent from the majority's opinion. While I agree with the majority that amendments to Tennessee Code Annotated section 50-2-101 do not govern enforcement of Section 50-2-107, I disagree with the court's interpretation of section 107 itself, and I further disagree with this Court's holding in *Owens*.

The majority correctly notes that "our goal when construing a statute is to give full effect to the intent of the General Assembly, neither exceeding nor restricting the intended purpose of the statute."  The express language of section 107 provides for enforcement through criminal law avenues by stating that a violation of that section is a Class C misdemeanor. In my view, Tennessee Code Annotated section 50-2-107 does not provide for a private cause of action for at least three reasons: (1) the Tennessee Supreme Court, in *Brown*, determined that a substantially similar statute did not confer a private cause of action; (2) Title 50, Chapter 2, Part 1, as a whole, generally provides only for governmental enforcement, which is inconsistent with a legislative intent to incorporate a private cause of action; and (3) the Tennessee General Assembly ("General Assembly") knows how to create a private cause of action in addition to governmental enforcement and chose not to do so with respect to the Tennessee Wage Regulation Act.

The majority relies heavily on *Owens v. University Club of Memphis*, No. 02A01-9705-CV-00103, 1998 WL 719516 (Tenn. Ct. App. 1998) (*no perm. app. filed*), which determined that a private cause of action does, in fact, exist under section 107.  The *Owens* court noted that "the statute contains no express indication of legislative intent to create or deny a private right of action. . . ." *Owens,* 1998 WL 719516, at \*11.  Rather, it applied the test utilized by the court in *Buckner v. Carlton*, 623 S.W.2d 102 (Tenn. Ct.

App. 1981), and determined that "a private action is consistent with the purpose of the legislation[] and indeed complements the remedy in the statute by providing a mechanism to make employees whole." *Owens*, at \*11. Thus, the *Owens* court specifically recognized that the statute itself provides a remedy yet also determined that a private cause of action "complements" the explicit remedy.

In *Brown v. Tennessee Title Loans, Inc.*, 328 S.W.3d 850 (Tenn. 2010), the Tennessee Supreme Court considered a similar question to the one presented in this case, although dealing with an entirely different statute. In *Brown*, individuals who pledged their vehicle titles in exchange for monetary loans filed suit against a title pledge lender, arguing that the lender charged interest in excess of the maximum set forth in the Tennessee Title Pledge Act ("TTPA"), Tennessee Code Annotated sections 45-15-101 to -120 (2000). The question presented to the supreme court in that case was "whether the Tennessee Title Pledge Act, Tenn. Code Ann. §§ 45-15-101 to 120 (2000), permits a private right of action on behalf of pledgors against title pledge lenders who allegedly charged excessive interest and prohibited fees." *Id*. at 852.

The supreme court analyzed the issue as follows:

> Determining whether a statute creates a private right of action is a matter of statutory construction. *Premium Fin. Corp. of Am. v. Crump Ins. Servs. of Memphis, Inc.*, 978 S.W.2d 91, 93 (Tenn. 1998). Our essential duty in statutory construction is to determine and implement the legislature's intent without limiting or expanding the statute's coverage beyond what the legislature intended. *Id.*; *Hawks v. City of Westmoreland*, 960 S.W.2d 10, 16 (Tenn. 1997). When the existence of a private right of action depends on the contents of the statute, "our courts are not privileged to create such a right under the guise of liberal interpretation of the statute." *Premium Fin. Corp.*, 978 S.W.2d at 93; *see Hogan v. McDaniel*, 204 Tenn. 235, 319 S.W.2d 221, 223 (1958) ("Judicial legislation has long been regarded by the legal profession as unwise, if not dangerous business."). The authority to create a private right of action pursuant to statute is the province of the legislature. *Premium Fin. Corp.*, 978 S.W.2d at 93; *Reed v. Alamo Rent-A-Car, Inc.*, 4 S.W.3d 677, 689 (Tenn. Ct. App. 1999).

> To determine whether the legislature intended to create a private right of action for excessive interest and prohibited fees, we begin with the express statutory language. *See Ergon, Inc. v. Amoco Oil Co.*, 966 F.Supp. 577, 584 (W.D. Tenn. 1997); *Premium Fin. Corp.*, 978 S.W.2d at 93. Here, there is no dispute that the express language of the TTPA does not create such a right of action on behalf of a title pledgor against a title pledge lender—whether in the specific section prescribing the interest and fees that

2

title pledge lenders may charge, Tenn. Code Ann. § 45-15-111(a), or elsewhere.

If a statute does not expressly create a private right of action, our next inquiry is whether the legislature otherwise indicated an intention to imply such a right in the statute. *Premium Fin. Corp.*, 978 S.W.2d at 93; *Reed*, 4 S.W.3d at 689. In this analysis, we look to the statutory structure and legislative history. *Id*. Appropriate factors to consider include (1) whether the party bringing the cause of action is an intended beneficiary within the protection of the statute, (2) whether there is any indication of legislative intent, express or implied, to create or deny the private right of action, and (3) whether implying such a remedy is consistent with the underlying purposes of the legislation. *Ergo*n, 966 F.Supp. at 583-84; *Buckner v. Carlton*, 623 S.W.2d 102, 105 (Tenn. Ct. App. 1981), superseded by statute on other grounds, Act of May 24, 1984, ch. 972, 1984 Tenn. Pub. Acts 1026, as recognized in *Lucas v. State*, 141 S.W.3d 121, 129, 137 (Tenn. Ct. App. 2004); *see Premium Fin. Corp.*, 978 S.W.2d at 93. The burden ultimately falls on the plaintiff to establish that a private right of action exists under the statute. *Premium Fin. Corp.*, 978 S.W.2d at 93 (citing *Ergon*, 966 F.Supp. at 585); *Gillespie v. City of Memphis*, No. W2007-01786-COA-R3-CV, 2008 WL 2331027, at *9 (Tenn. Ct. App. June 5, 2008).

*Brown*, 327 S.W.3d at 855-856.

The supreme court noted that the plaintiffs in *Brown* were intended beneficiaries of the TTPA. However, the court noted that the "mere fact that the legislature enacted the TTPA to protect and benefit pledgors is not alone sufficient [] to imply a private right of action." *Id*. at 858. The court went on to analyze whether there was "any indication of legislative intent, express or implied, to create or deny a private right of action" and noted that "Plaintiffs bear the burden of establishing the evidence of legislative intent to create such a right." *Id*. The court found no legislative history to support the contention that the legislature intended to imply a private right of action in the TTPA and ultimately determined that "[p]laintiffs can point to nothing in the legislative history that would make it 'manifestly clear' that the legislature intended to engraft a private right of action onto the governmental means of enforcement provided for in the TTPA." *Id.* (citing *Premium Fin. Corp.*, 978 S.W.2d at 94).[1]

---

[1]In addition to analyzing the *Premium Finance* case, the court also favorably discussed *Petty v. Daimler/Chrysler Corp.*, 91 S.W.3d 765 (Tenn. Ct. App. 2002), *perm. app. denied* (Tenn. Sept. 9, 2002), which found no private cause of action under the motor glass vehicle safety statute, and *Reed v. Alamo Rent-A-Car, Inc.*, 4 S.W.3d 677 (Tenn. Ct. App. 1999), *perm. app. denied* (Tenn. Oct. 4, 1999), which determined there was no implied private right of action under a provision of the Tennessee Workers' Compensation Law dealing with case management duties. Interestingly, immediately after its discussion of these two cases, the *Brown* court footnoted *Owens* with a "but

Particularly relevant to the analysis in this case, the Tennessee Supreme Court went on to say:

> The courts of this state have refused to imply a private right of action in regulatory statutes enforced through governmental remedies. Our jurisprudence reflects the United States Supreme Court's maxim that "it is an elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it." *Transam. Mortg. Advisors, Inc. v. Lewis*, 444 U.S. 11, 19, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979); *see Ellison*, 63 F.3d at 470 (describing courts as "especially reluctant" to imply additional remedies in a statute that expressly provides a remedy). Accordingly, in *Premium Finance Corp.*, we determined that the Premium Finance Company Act was "structured so as to evince a clear design to regulate the premium finance industry" and accomplished that regulatory function through many of the same mechanisms used in the TTPA: requiring companies to be licensed, prescribing the contents of financial agreements, and setting interest rates. [*Premium Fin. Corp.,*] 978 S.W.2d at 94. The act's enforcement provisions were limited to criminal sanctions and administrative penalties. *Id.* Because the "act as a whole provide[d] for governmental enforcement of its provisions," we declined to "casually engraft means of enforcement of one of those provisions unless such legislative intent is manifestly clear." *Id.* We found no such manifestly clear intention and dismissed a premium finance company's claim under the act against the defendant insurers for failure to return unearned premiums. *Id.*

*Id.* at 860.

In this case, as in *Brown*, the appellants have pointed to "nothing in the legislative history that would make it 'manifestly clear' that the legislature intended to engraft a private right of action onto the governmental means of enforcement provided for in the TTPA." They had "the burden of establishing the evidence of legislative intent to create such a right." *Id.* at 858. The United States Supreme Court has observed that "implying a private right of action on the basis of congressional silence is a hazardous enterprise, at best." *Touche Ross & Co. v. Redington,* 442 U.S. 560, 571, 99 S.Ct. 2479, 2486 (1979). After all, "[t]he central inquiry remains whether [the legislature] intended to create, either expressly or by implication, a private cause of action." *Transamerica Mortg. Advisors, Inc. v. Lewis,* 444 U.S. 11, 23-24, 100 S.Ct. 242, 249 (1979).

---

see" citation, noted that no Tenn. R. App. P. 11 application was filed, and offered no express approval or disapproval of the *Owens* court's holding. *Brown*, 328 S.W.3d at 860 n.12.

Section 50-2-107 of the Tennessee Code expressly provides an enforcement mechanism. In my view, the role of the courts is not to casually "complement" the remedy already provided in the statute but rather to enforce the remedy clearly articulated by the plain language of the statute.[2] As the Court explained in *Brown*, "[t]he authority to create a private right of action pursuant to statute is the province of the legislature." *Brown*, 328 S.W.3d at 854. Perhaps a private cause of action is the most sensible method of protecting tipped employees; if the General Assembly agrees, it is free to expressly provide such a remedy instead of or in addition to the criminal enforcement mechanism currently provided by section 107. Regardless of whether we believe the enforcement mechanism provided by the General Assembly is the best among various alternatives, we should be "especially reluctant" to imply additional remedies. I do not believe this Court's decision in *Owens* can be reconciled with the Tennessee Supreme Court's analysis in *Brown v. Tennessee Title Loans, Inc.*, especially considering the lack of any discussion of legislative intent in *Owens.* Therefore, I would adopt the reasoning utilized by the Tennessee Supreme Court in *Brown* and determine that Tennessee Code Annotated section 50-2-107 does not provide a private cause of action.

I recognize that disagreeing with a prior decision of this Court raises potential stare decisis concerns. However, Tennessee Supreme Court Rule 4(G) provides, in relevant part, as follows:

> (G)(1) An unpublished opinion shall be considered controlling authority between the parties to the case when relevant under the doctrines of the law of the case, res judicata, collateral estoppel, or in a criminal, post-conviction, or habeas corpus action involving the same defendant. Unless designated "Not For Citation," "DCRO" or "DNP" pursuant to subsection (F) of this Rule, unpublished opinions for all other purposes shall be considered persuasive authority. . . .
> (2) Opinions reported in the official reporter, however, shall be considered controlling authority for all purposes unless and until such opinion is reversed or modified by a court of competent jurisdiction.

---

[2] In *Cort v. Ash*, 422 U.S. 66, 79, 95 S.Ct. 2080, 2088 (1975), the United States Supreme Court recognized that a statute's "provision of a criminal penalty does not necessarily preclude implication of a private cause of action for damages." The Supreme Court would not "go so far as to say that in this circumstance a bare criminal statute can never be deemed sufficiently protective of some special group so as to give rise to a private cause of action by a member of that group." *Id.* at 80; 95 S.Ct. at 2089. However, in the cases the court cited that did imply a private cause of action in addition to a criminal penalty, "there was at least a statutory basis for inferring that a civil cause of action of some sort lay in favor of someone." *Id.* at 79-80, 2088-89. For example, one of the statutes "included language pertinent only to a private right of action for damages, although such a right of action was not expressly provided, thus rendering '(t)he inference of a private right of action . . . irresistible.'" *Id.* at 79, 2088 n.11(quoting *Texas & Pacific R. Co. v. Rigsby*, 241 U.S. 33, 40, 36 S.Ct. 482, 484, 60 L.Ed. 874 (1916)). By contrast, the statute before the court in *Cort v. Ash* contained "absolutely no indication that civil enforcement of any kind was available to anyone." In my view, the same can be said about Tennessee Code Annotated section 50-2-107. *Id.* at 80, 2089.

Thus, this Court's decision in *Owens* is not controlling authority, as it was not reported in the official reporter. It is, of course, persuasive authority, and I do not cavalierly disagree with it. However, "when no application for review of an opinion of the intermediate courts is sought, it has no stare decisis effect, and such an opinion cannot serve to modify or change existing law. The doctrine of sta[r]e decisis . . . does not apply with full force until the question has been determined by a court of last resort." *Swift v. Kirby*, 737 S.W.2d 271, 277 (Tenn. 1987). I recognize the oddity of a Court of Appeals judge asserting that our own opinions may not have stare decisis effect. *See Evans v. Steelman*, No. 01-A-01-9511-JV-00508, 1996 WL 557844, at *2 (Tenn. Ct. App. 1997). However, the *Brown* court's use of two cases for which Rule 11 permission to appeal was denied by the supreme court to further its ultimate decision, and the court's short shrift of *Owens*, for which no Rule 11 application was filed, is illustrative of the principle articulated in *Swift*. Since no permission to appeal was filed in *Owens*, the case does not have stare decisis effect.

The majority gives great weight to the fact that the legislature amended section 50-2-107 in 2012 and did nothing to legislatively overrule *Owens*. The majority concludes that this constitutes "compelling evidence of legislative intent on the issue." However, I am not persuaded that the legislature's inaction provides such compelling evidence. The legislature is presumed to know the state of law, but this principle implies legislative knowledge of not only this Court's holding in *Owens* but also the Tennessee Supreme Court's holding in *Brown*. As noted above, I find the two cases irreconcilable. I do not interpret the legislature's inaction as compelling evidence of an endorsement of *Owens*.

While I agree with the majority that Section 50-2-101 does not control Section 50-2-107, I do think it worthwhile to examine various sections of Title 50, Chapter 2, Part 1 in order to view Section 107 in context. Section 50-2-101 requires employers to inform employees of the amount of wages the employees will be paid; the department of labor and workforce development is charged with enforcing the section. Section 50-2-103 addresses the manner in which employees must be paid and provides for meal breaks; a violation of this section is a Class B misdemeanor, and enforcement is vested in the department of labor and workforce development. Section 50-2-104 governs misrepresentations of the amount of wages an employee is to receive; a violation of this section is a Class C misdemeanor, and "the commissioner or commissioner's designated representative" has discretion whether to pursue violations civilly or criminally. Tenn. Code Ann. § 50-2-104. Section 50-2-106 prohibits employers from dictating where employees purchase goods and services; a violation of this section is a Class C misdemeanor. While the majority notes that §§ 50-2-102 and -110 provide for private causes of action and demonstrate that the General Assembly knows how to confer a private cause of action in wage regulation, the vast majority of the sections in that part expressly provide for criminal violations, and some sections authorize enforcement only through the department of labor and workforce development. "Where an act as a whole provides for governmental enforcement of its provisions, we will not casually engraft

6

means of enforcement of one of those provisions unless such legislative intent is manifestly clear." *Premium Fin. Corp. of Am. v. Crump Ins. Servs. of Memphis, Inc.*, 978 S.W.2d 91, 94 (Tenn. 2010). I do not find such clear intention in the statute under review. Engrafting a private cause of action onto section 50-2-107 is inconsistent with the other sections in that part.

Finally, when the legislature desires to provide a private damage remedy, it knows how to do so. For example, with regard to wiretapping, Tennessee Code Annotated section 39-13-601 and -602 declare certain conduct to be unlawful and a Class D felony, and section 39-13-603 provides that an aggrieved person "may in a civil action recover from the person or entity that engaged in that violation." *See also* Tenn. Code Ann. §§ 48-1-121--122 (declaring certain conduct unlawful under the Tennessee Securities Act and providing that a party who is damaged "may sue either at law or in equity in any court of competent jurisdiction" to enforce liability). "The existence of these other statutes is conclusive evidence that the Legislature knows how to [take such action] when it chooses to do so." *Cookeville Reg'l Med. Ctr. Auth. v. Cardiac Anesthesia Servs., PLLC,* 2009 WL 4113586, at *7-8 (Tenn. Ct. App. 2009). With respect to section 50-2-107, the General Assembly has not made that choice, and I do not believe Ms. Hardy has satisfied her burden to prove the legislative intent to do so.

For the foregoing reasons, I respectfully dissent from the majority's determination that a private cause of action is available under Tennessee Code Annotated Section 50-2-107.

_____
BRANDON O. GIBSON, JUDGE

7