Mark HASKINS, Alan Chance, Winfred Davis, Michael Mathis and Charles R. McCrary, Plaintiffs–Appellees,

v.

CITY OF CHATTANOOGA, Tennessee, a municipal corporation, Defendant–Appellant,

Court of Appeals of Tennessee, Eastern Section.

May 13, 1993.

Permission to Appeal Denied by Supreme Court Sept. 27, 1993.

W. Jeffrey Hollingsworth and Stephen S. Duggins, Stophel & Stophel, P.C., Chattanooga, for plaintiffs-appellees.

Michael A. McMahan, Nelson, McMahan, Parker & Noblett, Chattanooga, for defendant-appellant.

## OPINION

FRANKS, Judge.

Plaintiffs, police officers employed by defendant, sued defendant City for breach of their employment contract and further averred that City officials' failure to enforce the City code violated the terms of their employment and created a cause of action under 42 U.S.C. § 1983. The Trial Court held the City had violated the City code and section 1983 and ordered promotion and back pay for all plaintiffs and attorneys' fees against defendant under 42 U.S.C. § 1988.

On appeal, the City does not dispute the findings of code violations or contest the remedy afforded, but solely questions the award of attorneys' fees insisting plaintiffs are not entitled to section 1983 relief.

At various times, each of the patrol officers had been transferred to the detective departments of units, such as burglary or juvenile justice. These moves were commonly regarded by plaintiffs as offering an increase in both status and responsibilities. The parties stipulated to the amount of time each officer

has spent doing detective or investigative work.

Chattanooga City Code § 16–10 provides:
"**Sec. 16–10. Promotion or pay for employees assigned to higher paid positions; trainees.**

(a) Whenever an employee of the fire department or police department is assigned by the chief of that department to do the work and perform the duties of a higher paid position, and after such employee performs such duties for at least thirty (30) consecutive calendar days, such assignment shall be reported by the commissioner of fire and police to the board of commissioners at its next regular meeting. On the sixty-first consecutive calendar day such employee shall be returned to performing the duties of his regular position unless he is promoted in accordance with article III, division 2 of chapter 2 of this Code, with the approval of the board of commissioners, or unless before such sixty-first consecutive calendar day his salary is increased to that of the higher paid position for a specified period of time not to exceed an additional six (6) calendar months upon the recommendation of the commissioner of fire and police with the approval of the board of commissioners; provided, however, that this section shall apply only to those below the rank of chief of any grade, whether deputy, assistant, or otherwise, and the foregoing shall not apply to a trainee for a position.

(b) A 'trainee' is any person who is assigned by the chief of his department to learn the duties of another position. Such assignments shall be for a period not to exceed six (6) calendar months and shall be reported by the commissioner of fire and police to the board of commissioners within thirty (30) days of such assignment. After a maximum of six (6) calendar months, a trainee shall either be promoted in accor-

dance with article III, division 2 of chapter 2 of this Code et seq., upon recommendation of the commissioner of fire and police with the approval of the board of commissioners, or returned to his former position. (Code 1968, § 16–8; Ord. No. 5927, § 1.7–23–68)."

Although the officers had worked as detectives for many months when the lawsuit was filed, they had received neither promotions nor pay increases.

At trial, both the Chief of Police and the City Administrator of Safety acknowledged that they were aware of § 16–10 and knew that it was rarely enforced. The trainee provision at § 16–10(b), added in 1990, they believed would provide a more realistic time frame of 18 months for evaluating performance. In addition, a new position of "Inspector" was created for which patrol officers could become eligible through testing and seniority, but defendant's officials admitted that they had not complied with the ordinance.

To recover under section 1983, plaintiffs must show that they were deprived of a right, privilege or immunity secured to them by federal law.[1] In *Collins v. City of Harker Heights,* —— U.S. ——, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992), the Supreme Court addressed the issue of a municipality's accountability. It noted that municipalities are not liable under *respondent superior* for § 1983 claims, and that municipalities may not be held liable unless their policies or customs have caused the denial of a constitutionally protected right. —— U.S. at ——, 112 S.Ct. at 1066. When a policy or custom is executed by "those whose edicts or acts may fairly be said to represent official policy", the municipality may be accountable. *Id.* In this case, high ranking city officials who knew about code Sec. 16–10, refused to enforce it. Plaintiffs met their burden to prove a "policy or custom" existed, but this is only the

---

1. "42 U.S.C.1983. Civil Action for deprivation of rights

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any

rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia."

threshold issue. As the unanimous *Collins* court observed, following a policy or custom merely means that there may be a basis for imposing liability on the municipality for the conduct of its agents. The determinative question is whether plaintiffs' harm was due to a constitutional violation. —— U.S. at ——, 112 S.Ct. at 1068. Plaintiffs here contend they were denied due process.

The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property. *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). The *Roth* court noted that property interests are not created by the Constitution, rather they are created and their dimensions are defined by existing rules or understandings that flow from independent sources, such as state law.

■ Once it is determined that a plaintiff has a property interest under the Fourteenth Amendment, the issue thus becomes what process was due considering a number of factors: the nature of the interest, the risk of erroneous deprivation due to inadequate state procedures, the value of the added procedures, and the state's burden in providing them. *Ramsey v. Board of Education of Whitley County,* 844 F.2d 1268 (6th Cir. 1988). Not every deprivation of liberty or property requires a federal remedy. 844 F.2d at 1272.

Contrary to defendant's assertion, plaintiffs' amended complaint avers denial of procedural due process among the officers' claims.[2] However, the case was tried as one of substantive due process violation. Neither in their prayer for relief nor at trial did the plaintiffs suggest they were denied an available procedure. They did not request a hearing or deprivation notice. In a comparable case, a firefighter sued a consolidated city/county government under section 1983 for failure to promote him under an applicable ordinance. *Charles v. Baesler,* 910 F.2d 1349 (6th Cir.1990). The plaintiff there also contended that he was deprived of a property interest by denial of procedural due process. The Court observed:

> Charles does not contend that the government and its officials could not deny his promotion without first according him fair notice and hearing. Rather, Charles argues that he could not constitutionally be denied promotion at all. He asserts a categorical substantive due process right to promotion.

> We conclude that no such rights exists. Most, not all, state-created contract rights, while assuredly protected by procedural due process, are not protected by substantive due process. The substantive Due Process Clause is not concerned with the garden-variety issues of common law contract. Its concerns are far narrower, but at the same time, far more important. Substantive due process "affords only those protections 'so rooted in the traditions and conscience of our people as to be ranked fundamental.'"

*Id.* at 1352–53 (citations omitted).

Plaintiffs' contention that the city officials' actions were arbitrary, capricious and shocking, combined with their action for breach of contract, posits their averments as substantive due process claims recast in procedural terms.

Plaintiffs clearly allege substantive violations, i.e., that City officials acted willfully, arbitrarily, and capriciously to violate their rights to pay and promotion.

■ Substantive due process rights are created only by the Constitution. *Regents of University of Michigan v. Ewing,* 474 U.S. 214, 106 S.Ct. 507, 88 L.Ed.2d 523 (1985). The Supreme Court has consistently been reluctant to enlarge the concept of substantive due process. *Collins,* —— U.S. at ——, 112 S.Ct. at 1068. In *Ewing,* a medical student dismissed from school sued for the opportunity to take a second exam, a commonly allowed practice. The majority held that the school's refusal to allow Ewing to

---

**2.** *Leatherman v. Tarrant County Narcotics Unit,* —— U.S. ——, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993) held that federal courts may not apply "heightened pleading standards" more stringent than the usual pleading requirements of civil procedure in civil rights cases alleging municipal liability under 42 U.S.C.A. § 1983.

take a second exam did not violate any constitutional right due Ewing. In his concurrence, Justice Powell commented on the nature of the alleged substantive violation:

The interest asserted by [Ewing] ... is essentially a state law contract right. It bears little resemblance to the fundamental interests that previously have been viewed as implicitly protected by the Constitution.

474 U.S. at 229, 106 S.Ct. at 516.

■ Federal appeals courts which have considered whether a breach of a government employment contract which results in a denial of employee benefits is a substantive due process violation, hold such breaches do not come within section 1983 protection. *See e.g., Charles v. Baesler,* 910 F.2d 1349 (6th Cir.1990), and *Oladeinde v. City of Birmingham,* 963 F.2d 1481 (11th Cir.1992).

In this case, there is no suggestion that City officials singled out these particular plaintiffs for discriminatory harm by increasing their responsibilities without increasing their pay or status. Although defendant's officials breached the plaintiffs' right to employment benefits under the City code, we cannot conclude the City officials' behavior, while undeniably wrong, "shocks the conscience", or as phrased in *Charles,* "[can] be equated with the sort of injustice involved in 'egregious abuse of government power.' ". 910 F.2d at 1353.

■ Assuming, *arguendo,* that a procedural due process claim was properly presented, plaintiffs cannot prevail on this theory. Courts of Appeals throughout the country have held that when government employees sue their employers under section 1983 for deprivation of property rights, the claim fails when the rights involve employment benefits, rather than the employment relation itself, and when a state law remedy for breach of the employment contract provides the "process due". *See e.g., Oladeinde v. City of Birmingham,* 963 F.2d 1481 (11th Cir.1992); *Ramsey v. Board of Education of Whitley*

*County,* 844 F.2d 1268 (6th Cir.1988); *Boston Environmental Sanitation Inspectors Assoc. v. City of Boston,* 794 F.2d 12 (1st Cir.1986); *Brown v. Brienen,* 722 F.2d 360 (7th Cir. 1983).

Although the existence of overlapping state remedies is not generally relevant to whether a section 1983 remedy is available, there is an exception for procedural due process violations. *See Zinermon v. Burch,* 494 U.S. 113, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990). The constitutional deprivation is incomplete unless the state has failed to provide due process. To determine whether a constitutional violation has occurred, it is necessary to ask what process the state provided, and whether it was adequate. The Supreme Court in *Zinermon* observed:

Therefore, to determine whether a constitutional violation has occurred, it is necessary to ask what process the state provided, and whether it was constitutionally adequate. This inquiry would examine the procedural safeguards built into the statutory or administrative procedure of affecting the deprivation, and any remedies for erroneous deprivation provided by statute or tort law.

494 U.S. at 126, 110 S.Ct. at 983.[3]

Various rationales are advanced for not affording employee benefit cases section 1983 jurisdiction. They include an unwillingness to "trivialize" the Constitution with what are in essence personnel disputes, *Brown,* 722 F.2d at 364, and the futility of providing predeprivation hearings that would lead to the same result, when the plaintiffs claim an absolute entitlement to a benefit which is easily measured in money or time, *Ramsey,* 844 F.2d at 1272–74.

Section 16–10 of the City Code afforded plaintiffs a "legitimate claim of entitlement" to promotions and pay increases. However, the plaintiffs' breach of contract action adequately remedied the deprivation without the need to resort to federal remedies. More-

---

**3.** *Accord Collins.* The *Collins* Court reaffirmed this principle, saying:

"The reasoning in those cases applies with special force to claims asserted against public employers because state law, rather than the Federal Constitution, generally governs the substance of the employment relationship." —— U.S. at ——, 112 S.Ct. at 1070 (*Citations omitted*).

over, although the officers were not required to exhaust administrative remedies before filing a § 1983 action, *Henderson v. Bentley,* 500 F.Supp. 62 (E.D.Tenn.1980) *aff'd,* 698 F.2d 1219 (6th Cir.1982), other state law remedies were available. The State afforded plaintiffs the process which they utilized to remedy the deprivation.

Accordingly, we reverse the judgment of the Trial Court on the basis that plaintiffs are not entitled to relief under section 1983, and remand with costs of appeal assessed to appellees.

SANDERS, P.J. (E.S.), and WILLIAM H. INMAN, Senior Judge, concur.