IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
April 24, 2008 Session

## CAPTAIN LOUIS J. GILLESPIE, JR., ET AL. v. CITY OF MEMPHIS

**Appeal from the Chancery Court for Shelby County**
**No. CH-00-0887-2      Arnold B. Goldin, Chancellor**

**No. W2007-01786-COA-R3-CV - Filed June 5, 2008**

The charter and code of ordinances of the City of Memphis set out certain specific provisions, including civil service protections, concerning the organization and operation of the City's police department. This appeal arises from a suit brought by several high ranking members of the police force who allege that the City created a de facto rank in conflict with the City's charter and ordinances. The trial court held that the City had impermissibly created a new rank and granted relief in the form of an injunction and a declaratory judgment. It, however, denied claims for damages pursuant to 42 U.S.C. § 1983 and an implied right of action under the City's civil service rules. We find that the question regarding the appropriateness of the trial court's awarding injunctive and declaratory relief is now moot and accordingly vacate that part of its decision. We affirm the trial court's decision that monetary damages are not available.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in Part, Vacated in Part, and Remanded**

WALTER C. KURTZ, SR. J., delivered the opinion of the court, in which DAVID R. FARMER and HOLLY M. KIRBY, JJ., joined.

Henry Shelton, III, Megan Arthur, and Emily C. Taube, Memphis, Tennessee for the appellants, Captain Louis J. Gillespie, Jr. et al.

Louis P. Britt, III and P. Daniel Riederer, Memphis, Tennessee, for the appellee, City of Memphis.

### OPINION

This case involves the classification of police officers under the charter and civil service rules of the City of Memphis ("City"). For many years the City's police department recognized a position which was denoted as the "executive major." In this action, several officers holding the ranks of captain and major sued the City alleging that this position was not authorized by the applicable law. The trial court held that the City had in fact created an unauthorized rank and enjoined its use; the court, however, denied their claims for monetary relief. The officers ("appellants") have appealed arguing that they are entitled to money damages; the City argues that the court below erred in finding

the position of "executive major" to be an unauthorized rank. For the reasons stated herein, we affirm in part, vacate in part, and remand.

**I**

On May 8, 2000, the appellants filed a complaint against the City in the Chancery Court for Shelby County seeking both a declaratory judgment and a permanent injunction as well as damages. The complaint was twice amended, and the final amended complaint named as plaintiffs sixty-three members of the Memphis Police Department holding the rank of captain or major.

The appellants argued that the City had effectively created a new, de facto rank within the police force—that of "executive major"—and that the officers holding this rank had certain supervisory powers, including authority over regular majors and captains. They further contended that these "executive majors" wore distinctive uniforms, received extra pay, and were provided city-owned automobiles. The appellants took the position that the City's charter and civil service rules do not authorize such a rank and that, without this authorization, the rank is impermissible. As a remedy they sought a declaration that the creation and utilization of the rank was illegal; relatedly, they also sought an order enjoining its use. They further prayed for damages for the period within which they were deprived of the "right" to obtain the rank of "executive major" in the force. The appellants' claims for monetary relief were premised on two grounds—first, that such relief was owed as compensation for lost earnings and benefits associated with the position of "executive major" and, second, that it was available pursuant to 42 U.S.C. § 1983 for due process and equal protection violations.

The City responded by arguing that extra responsibilities were in fact given to certain majors, but that this was well within the executive authority possessed by the City's Director of Police. It maintained that there were no distinctive uniforms and that these "executive majors" had no disciplinary authority over other majors. According to the City, the vehicles and extra pay cited by the appellants were related to the assumption of additional responsibilities—and, moreover, these responsibilities were often temporary, arising when an "executive major" substituted for an absent supervisor. Thus, said the City, these additional duties were merely recognized by using the appellation "executive major," but this did not run afoul of the ranks designated in the City's charter and ordinances because it was not a separate rank.

The case came for trial on November 14, 2006. In its ruling, the trial court agreed with the appellants that the Director of Police had acted "without authority" in creating a de facto rank called the "executive major." The chancellor stated orally in part:

> In this case, the Court finds that obviously for a period of a number of years, 25 years, 50 years—obviously, for a long period of time prior to 1998, there were persons who were acting either as executive Captains or executive Majors and had administrative responsibilities and were placed in those positions at the discretion of the Chief or the director now. The Court had no—sees no—that there was apparently no problem with that.

Then in March of 1998 at the request of a group of executive Majors, there was a request that there be a change in pay and for whatever reason—or however this definition of "responsibilities" occurred in this memo that's been introduced as Exhibit 2—at the same time that the executive Majors were given responsibilities as Duty—as Duty Chief. The—this definition of "responsibilities" as set out in this memo appear[s] to give supervisory function[s] to the executive Major that—over other Majors. The effect of that is the creation of a de facto rank by the City without the authority of the City providing such additional rank.

The court's order of December 7, 2006 reads:

A. By giving certain Majors within the Memphis Police Department supervisory authority over other Majors and Captains and by compensating those supervisory Majors with salary and benefits in excess of that received by Captains and Majors, the Defendant City of Memphis has created the de facto rank of Executive Major and in doing so has violated the Memphis City Charter and Memphis City Code of Ordinances.[1]

B. Defendant is liable to Plaintiffs for damages in an amount to be determined at a later hearing.

Subsequently, the City moved the trial court to dismiss the appellants' claims for monetary relief on the grounds that there is no private cause of action arising under the City's charter and ordinances for violations of their civil service provisions. The trial court agreed with the City on this point and reversed its prior ruling that the appellants were entitled to damages. Consequently, it dismissed those claims. The court's order of July 20, 2007 states:

This cause came on to be heard on July 9, 2007, upon the Court's Order as to Liability and Declaratory Judgment, upon Defendant's Motion to Dismiss Plaintiffs' Claim for Monetary Relief, upon Plaintiffs' Response thereto, upon statements of counsel for Plaintiffs and Defendants, and upon the entire record herein, based upon all of which

IT APPEARING TO THE COURT, for the reasons set forth in the Court's oral ruling, a copy of which is attached hereto and incorporated herein by reference, that Defendant's Motion is well-taken and should be granted, and

IT FURTHER APPEARING TO THE COURT, that Defendant created a *de facto* rank of Executive Major in violation of the City Charter and should be enjoined from its conduct in violation of the Charter of the City of Memphis,

---

[1] The record is not clear that the court dismissed the appellants' claims under 42 U.S.C. § 1983. On appeal, however, both sides agree that, by not referencing those claims in its order, the trial court dismissed them by implication.

IT IS THEREFORE ORDERED, that:

1. Defendant's Motion to Dismiss Plaintiffs' Claims for Monetary Relief is granted.

2. The City of Memphis is enjoined from creating the rank of Executive Major which violates the requirements in the Charter and Ordinances of the City of Memphis for the proper creation of civil service ranks in the Memphis Police Department.

This appeal followed. The appellants seek to overturn the trial court's ultimate ruling that they are not entitled to monetary damages pursuant to either 42 U.S.C. § 1983 or a theory of an implied right of action under the City's charter and ordinances. The City, of course, embraces the trial court's ruling that damages were not an available remedy. But, on its cross-appeal, the City contends that the trial court erred in finding that it had created an unauthorized, de facto rank.

## II

This case came before the court below for trial without a jury. "[R]eview of findings of fact by the trial court in civil actions shall be de novo upon the record of the trial court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise." Tenn. R. App. P. 13(d); *see Curry v. City of Hohenwald*, 223 S.W.3d 289, 291 (Tenn. Ct. App. 2007). The trial court's legal conclusions, however, do not enjoy any such presumption of correctness. *See, e.g., Alison Group, Inc. v. Ericson*, 181 S.W.3d 670, 674 (Tenn. Ct. App. 2005); *see generally Campbell v. Florida Steel Corp.*, 919 S.W.2d 26, 35 (Tenn. 1996).

The parties present the following issues on appeal before this Court:

(1) Whether the trial court erred in concluding that the City had created a de facto rank called the "executive major" within the police department in violation of the City's charter and code of ordinances.

(2) Whether the trial court properly held that the City did not violate the appellants' rights to due process and equal protection.

(3) Whether the trial court was correct in dismissing the appellants' claims for monetary relief on the grounds that the City's charter and ordinances do not provide for a private right of action.

## III

### A.

The appellants argued below, and the trial court agreed, that the City created a de facto rank of "executive major" in violation of its charter and ordinances. According to the City, however, the title "executive major" was not meant to denote a separate rank within the police department. Instead, it was an internal designation of those majors to whom the Director of Police assigned additional duties.

The City's charter refers to the power of the board of commissioners, but since 1966 these powers have been possessed by the Memphis City Council. As to police services, the charter states:

## ARTICLE 11. POLICE DEPARTMENT

### Sec. 68. Duty of board to establish, fix duties, etc.

It shall be the duty of the board of city commissioners of the City of Memphis to establish and maintain a police department, prescribe its duties and by ordinance establish and fix the grades, ranks and classifications of all officers and other employees of the police department of the City of Memphis.

### Sec. 69. Appointment and salaries of employees.

The board of commissioners, in addition to all other powers delegated to it, is hereby authorized and fully empowered, by ordinance, to determine the number of officers and employees in each grade, rank and classification to be employed by the City of Memphis in the police department, and to fix the salaries of all of said officers and employees.

### Sec. 70. Chief of police and chief of detectives; number of other officers and employees to be determined by board of commissioners.

There shall be but one chief of police and one chief of detectives, but the board of commissioners shall be empowered by ordinance to designate the number of captains, lieutenants, sergeants, detective sergeants, detectives, patrolmen and all other officers and employees as may be necessary to efficiently conduct the department.

The Council, in turn, has adopted the following ordinance:

### 2.28.040 Appointment of other officers and employees of division:

The director of police services is authorized and empowered to appoint one deputy director, four deputy chiefs and as many chief inspectors, inspectors, captains, lieutenants, sergeants, detectives and patrol officers, together with such emergency police, secretaries, clerks, stenographers, operators, janitors, turnkeys, desk lieutenants, desk sergeants, mechanics, matrons, women police officers and such other help as may be needed to efficiently police the city and to efficiently conduct the police division of the city.

We note that the rank of major—executive or otherwise—is curiously absent from this listing.

The police services division enjoys civil service protections. *See* Memphis City Charter §

-5-

250.1; Memphis City Ordinance § 3.08.020. Specifically, Memphis City Ordinance § 3.08.040 states:

**Examinations for applicants for employment.**

A. All applicants for employment in positions protected by Sections 3.08.020 through 3.08.060 shall be subjected to competitive job-related examinations under such rules and regulations as may be adopted by the director of personnel.

B. The examinations to be provided for shall be of a practical nature and relate to such matters as will fairly test the relative competency of the applicant to discharge the duties of the particular position. No question in any examination shall relate to political or religious opinions or affiliations. The examination shall be conducted and controlled by the director of personnel.

Furthermore, the City's charter provides that any police officer hired before 1979 is to be promoted to captain if he or she serves for thirty years.[2] *See* Memphis City Charter § 67.

The distinction among the ranks in the force is further confused by the fact that, according to the parties' briefs, the rank of captain was at some point replaced by the rank of major (a designation distinct from "executive major"). The parties, however, cite no evidence in the record to support this. For example, the appellants' citation to the record is actually to nothing more than the oral statement of their counsel to the trial court.[3] The City does no better, stating in its brief, without citing to the record at all, that "[i]n 1991 merit captains were renamed commanders, and later renamed majors." Whatever the authority for the creation of the rank of major, the parties often refer to the ranks of major and captain interchangeably, and neither side makes an issue out of the existence of the rank of major. It is the "executive major" whose legitimacy is in question in this case.

Confronting the propriety of this appeal is the fact that several weeks prior to the November 2006 hearing before the trial court, the Director of Police abolished the position of "executive major" and replaced it with the position of "administrative major." This new "administrative major" would only receive pay outside of that normally received by other members of his rank when performing duties outside of the rank—for instance, if filling in for an absent inspector. In contrast, the "executive major" had received additional pay on a regular monthly basis. It is not clear from the record whether these "administrative majors" are assigned automobiles permanently or only when

---

[2] This provision has been the subject of prior litigation. *See Dunlap v. City of Memphis*, No. W2003-02649-COA-R3-CV, 2004 WL 2599752 (Tenn. Ct. App. Nov. 12, 2004). Noncompliance with this provision was also alleged in the first complaint filed in this case, but it is no longer part of the present lawsuit.

[3] Their citation is to Record Volume IV, p. 46, where counsel for the appellants orally stated: "Essentially, the city charter and the city code create five superior police ranks: . . . sergeants, lieutenants, captains, inspectors, and chief inspectors. Captains, the third rank, are these days known as majors because of the 30-year captain situation[.]"

assuming additional duties. The Court takes note of the following passage in the appellants' brief:

> [The Director of Police] later abolished the position of Executive Major in September 2006—only a few weeks before the original setting of this case for trial on October 1, 2006. Therefore, an injunction requiring the Defendant to comply with the Charter and Code by eliminating the rank of Executive Major is useless, as is a writ of mandamus ordering the Defendant to promote Appellants to Executive Major, as, thankfully, the "rank" no longer exists.

This development raises the question of whether this case is now moot.

"A moot case is one that has lost its justiciability because it no longer involves a present, ongoing controversy." *Alliance for Native American Indian Rights in Tennessee, Inc. v. Nicely*, 182 S.W.3d 333, 338 (Tenn. Ct. App. 2005) (citations omitted). "A case will be considered moot if it no longer serves as a means to provide some sort of judicial relief to the prevailing party." *Id.* (citations omitted). Where it appears that the act to be enjoined has ceased to exist, an action for an injunction becomes moot and will be dismissed. *Ford Consumer Fin. Co., Inc. v. Clay*, 984 S.W.2d 615, 616-17 (Tenn. Ct. App. 1998); *Hogue and Knott v. Kroger Co.*, 481 S.W.2d 784, 781 (Tenn. Ct. App. 1971); *see generally* 5 Am. Jur. 2d *Appellate Review* §§ 596-601 (2008). The Court recognizes that there are exceptions to the doctrine of mootness. *See Consumer Advocate Div. of the Office of the Tennessee Attorney Gen. v. Tennessee Regulatory Auth.*, Nos. M2004-01481-COA-R12-CV, M2004-01482-COA-R12-CV, M2004-01485-COA-R12-CV, 2006 WL 249511, at *8-12 (Tenn. Ct. App. Feb. 1, 2006). Even when one of these exceptions applies, however, "[d]ecisions concerning whether to take up cases that fit into one of the exceptions to the mootness doctrine are discretionary with the appellate courts." *McIntyre v. Traughber*, 884 S.W.2d 134, 137 (Tenn. Ct. App. 1994) (citing *Dockery v. Dockery*, 559 S.W.2d 952, 954 (Tenn. Ct. App. 1977)). We conclude that, even if this case did fit within one these exceptions, it would not be prudent to exercise that discretion here, especially since the very parties who sought the injunction now tell us that it is "useless" and the practice they sought to enjoin "no longer exists." The typical course when dismissing a case on appeal as moot is "to vacate the judgment and remand the case with directions that it be dismissed." *Id.* (citations omitted). That is the appropriate action in this case as to the trial court's injunction and declaratory judgment.

The fact that these two prospective remedies are moot does not, however, render the entire case moot. If the appellants are entitled to damages, then it would be of great consequence whether or not the City's introduction of the "executive major" was unauthorized. For the reasons set out below, we have determined that, even if the appellants are correct that the position of "executive major" is an unauthorized rank, they would not be entitled to monetary damages.

**B.**

The appellants claim entitlement to money damages under two separate theories. By way of an introduction, the Court observes a basic incongruousness in the appellants' positions. First, they urge that the City's introduction of the "executive major" was an "illegal" action leading to an

"unauthorized" rank. Then they go on to assert that they should benefit from what they themselves describe as actions not allowed by the law. The conflict between the assertion of an illegality on the one hand and the desire to benefit therefrom on the other necessarily infects any analysis of their claim to damages.

*1. Damages under 42 U.S.C. § 1983*

The first theory by which the appellants seek damages is under 42 U.S.C. § 1983. They argue that the City created a rank and then deprived them of its benefits when it did not allow them to be considered for promotion to it pursuant to the rules governing civil service. This, they say, constitutes a violation of their rights to due process and equal protection.

The claim for damages on the grounds of an equal protection violation must readily fail. This case is analogous to the case of *Faust v. Metropolitan Gov't of Nashville & Davidson County*, 206 S.W.3d 475 (Tenn. Ct. App. 2006). In that case, civilian employees of the Nashville fire department were, without legal authority, allowed to participate in the regular pension plan of the regular police officers and fire fighters. Civilian employees of the Nashville police department then brought suit contending that, if civilian employees of the fire department were allowed to participate, then they should be as well. Failing to allow this would, they said, deprive them of equal protection of the law. *Id.* at 478. This Court rejected that claim.

In *Faust*, this Court articulated two principles applicable to the instant case. The Court observed that giving the fire department's civilian employees pension benefits was without legal authority, was ultra vires, and thus was void. *Id.* at 485. The Court went on to make a second point: if benefits are inappropriately given to one group, the remedy is not to compound the illegality by giving it to others; rather, the remedy is to "remove the favored group from its favored position." *Id.* at 495-96 (citing *Heckler v. Matthews*, 465 U.S. 728, 739-40, 104 S.Ct. 1387, 1395, 79 L.Ed.2d 646 (1984)).

We find that the appellants' due process claims are considerably more inscrutable. It appears to be alleged that the City created the rank of "executive major" and that this action did not comply with the law. Then, civil service rules were not followed in the selection of persons to fill this illegal rank, thus depriving the appellants of their right to be considered. Under this theory, the City's ordinances somehow created an entitlement to a promotional process and the right to compete for the rank of "executive major." When this was not provided, the appellants argue, they were deprived of due process, and this now entitles them to damages.

The right to procedural due process in government employment turns upon whether or not the claimant possesses a property interest in the position. *See generally Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) (discussing government employment); 3 Ronald D. Rotunda & John E. Nowak, *Treatise on Constitutional Law: Substance and Procedure* § 17.5(d) (2008). Most such cases involve an allegation of wrongful termination without the requisite due process. State law determines whether a claimant truly has a property interest or entitlement to the incidents of government employment meriting due process protections. Obviously a civil service system and employment within that system create such an interest. Thus, if state law does not

provide sufficient procedures for termination of a government employee who has a property interest in his employment, then the due process clause will provide him protection.  *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985).

The protections described above do not typically apply to promotions, as there is usually no property interest in a promotion.  *See Haskins v. City of Chattanooga*, 877 S.W.2d 267, 269 (Tenn. Ct. App. 1993); *see also Bheemarao v. City of New York*, 141 F.Supp.2d 446, 449-50 (S.D.N.Y. 2001); 15A Am. Jur. 2d *Civil Service* § 57 (2008).  Only on rare occasions have the courts extended due process protections to include the right to a promotion, and even then it has only been recognized when a government has by its conduct created an implied contract assuring the claimant that a promotion would be forthcoming.  *See Paskvan v. City of Cleveland Civil Serv. Comm'n*, 946 F.2d 1233, 1235-36 (6th Cir. 1991).

There is nothing in the record to indicate that promotion of the appellants to the position of "executive major" was an assured right.  First, since the appellants contend that the rank was illegally created, there can be no right to be promoted to an illegal rank.  Second, though, there is no assurance that, even if eligible and considered, the appellants would have in fact been promoted to the rank.

Furthermore, the appellants' due process claims run squarely counter to the holding of this Court in *Haskins v. City of Chattanooga*, 877 S.W.2d 267 (Tenn. Ct. App. 1993).  In the *Haskins* case, police officers alleged that they took on responsibilities outside of their pay grade and that this entitled them to promotions under the existing city ordinance.  They argued that the city's practice violated both substantive and procedural due process thereby entitling them to damages pursuant to 42 U.S.C. § 1983.  *Id.* at 267-68.  The trial court agreed with the officers and ordered both promotions and back pay pursuant to section 1983.  *Id.* at 267.  On appeal, this Court—while acknowledging that the city had violated its own ordinance governing promotions—reversed the trial court's conclusion that there had been a constitutional violation.  We first held that the actions of the city could not be considered the kind of shocking or egregious abuse that would rise to the level of a violation of substantive due process.  *Id.* at 270.  We then analyzed the claims made by the officers for procedural due process:

> Courts of Appeals throughout the country have held that when government employees sue their employers under section 1983 for deprivation of property rights, the claim fails when the rights involve employment benefits, rather than the employment relation itself, and when a state law remedy for breach of the employment contract provides the "process due".  *See, e.g., Oladeinde v. City of Birmingham*, 963 F.2d 1481 (11th Cir. 1992); *Ramsey v. Board of Education of Whitley County*, 844 F.2d 1268 (6th Cir. 1988); *Boston Environmental Sanitation Inspectors Assoc. v. City of Boston*, 794 F.2d 12 (1st Cir. 1986); *Brown v. Brienen*, 722 F.2d 360 (7th Cir. 1983).
>
> Although the existence of overlapping state remedies is not generally relevant to whether a section 1983 remedy is available, there is an exception for procedural due process violations.  *See Zinermon v. Burch*, 494 U.S. 113, 110 S.Ct. 975, 108

L.Ed.2d 100 (1990). The constitutional deprivation is incomplete unless the state has failed to provide due process. To determine whether a constitutional violation has occurred, it is necessary to ask what process the state provided, and whether it was adequate. The Supreme Court in *Zinermon* observed:

> Therefore, to determine whether a constitutional violation has occurred, it is necessary to ask what process the state provided, and whether it was constitutionally adequate. This inquiry would examine the procedural safeguards built into the statutory or administrative procedure of [e]ffecting the deprivation, and any remedies for erroneous deprivation provided by statute or tort law.

494 U.S. at 126, 110 S.Ct. at 983.

Various rationales are advanced for not affording employee benefit cases section 1983 jurisdiction. They include an unwillingness to "trivialize" the Constitution with what are in essence personnel disputes, *Brown*, 722 F.2d at 364, and the futility of providing pre-deprivation hearings that would lead to the same result, when the plaintiffs claim an absolute entitlement to a benefit which is easily measured in money or time, *Ramsey*, 844 F.2d at 1272-74.

Section 16-10 of the City Code afforded plaintiffs a "legitimate claim of entitlement" to promotions and pay increases. However, the plaintiffs' breach of contract action adequately remedied the deprivation without the need to resort to federal remedies. Moreover, although the officers were not required to exhaust administrative remedies before filing a § 1983 action, *Henderson v. Bentley*, 500 F.Supp. 62 (E.D. Tenn.1980) *aff'd*, 698 F.2d 1219 (6th Cir. 1982), other state law remedies were available.[4] The State afforded plaintiffs the process which they utilized to remedy the deprivation.

Accordingly, we reverse the judgment of the Trial Court on the basis that plaintiffs are not entitled to relief under section 1983, and remand with costs of appeal assessed to appellees.

*Haskins*, 877 S.W.2d at 270-71 (internal footnote omitted). What makes the holding of *Haskins* even more daunting for the appellants here is that the officers in that case were not just denied the right to be considered for promotion. Rather, their status would have required their promotions. Still, this Court found no violation of 42 U.S.C. § 1983.

We conclude that the case before us is controlled by the reasoning and holding articulated by the Court in *Haskins*. Therefore, we find that the appellants have no valid claim for a violation

---

[4] Other like holdings have suggested that the availability of state court actions for injunctions, mandamus, or a declaratory judgment would also suffice. *See Shirokey v. Marth*, 585 N.E.2d 407, 413-14 (Ohio 1992).

of due process, and thus there is no remedy available to them under 42 U.S.C. § 1983.

Furthermore, in cases involving discretionary promotions, damages are not the appropriate remedy. This is not a case in which the appellants had a right to be promoted. By their own assertions they sought merely to be considered. The normal remedy for a systemic violation of civil service promotion procedures is not damages or back pay; instead it is "reconsideration for appointment or promotion after the defect in the process has been corrected." *Matter of Greco v. Dep't of Personnel of City of New York*, 640 N.Y.S.2d 509, 510 (N.Y. App. Div. 1996).

Having addressed the lack of damages as a remedy, the Court acknowledges that it has come full circle—back to the incongruousness of the appellants' claims. That is, the appellants seek damages for being denied consideration for promotion to a position which they simultaneously contend was illegally created. The law simply does not allow for recovery based on such an irrational and contradictory assertion.[5]

## 2. Damages Pursuant to a Private Right of Action for Civil Service Violations

The appellants also urge that the civil service provisions of the City's charter and code of ordinances create a private right of action under which they are entitled to damages. The Court can find no better analysis than that provided by U.S. District Court Judge Bernice Donald, who considered the same issue and wrote the following:

> Under Tennessee law, when a plaintiff asserts an injury that involves an alleged statutory violation, it is incumbent upon the court to determine whether the statute in question provides the plaintiff with a cause of action. *Petty v. Daimler/Chrysler Corp.*, 91 S.W.3d 765, 768 (Tenn. Ct. App. 2002). In other words, the mere fact that a statute has been allegedly violated and some person harmed, does not automatically give rise to a private cause of action for monetary relief in favor of that person. *Local 3-689, Oil, Chemical & Atomic Int'l Union v. Martin Marietta Energy Sys.*, 77 F.3d 131, 136 (6th Cir. 1996). In construing the statutory section at issue, the Court is "not privileged to create [a private right of action] under the guise of liberal interpretation of the statute." *Premium Finance Corp. of Am. v. Crump Ins. Serv. of Memphis, Inc.*, 978 S.W.2d 91, 93 (Tenn. 1998). Rather, it is the legislative body that has the authority to create legal rights and interests and no right of action can be brought until there is legislative authority for that right of action. *Id.*; *Hogan v. McDaniel*, 319 S.W.2d 221, 225 (Tenn. 1958). As a result, the burden of proving the existence of a private right of action lies with the plaintiff. *Premium Finance*, 978 S.W.2d at 93 (citing *Ergon, Inc. v. Amoco Oil Co.*, 966 F.Supp. 577, 585 (W.D. Tenn. 1997)).

Relying on *Ergon*, this Court noted recently that Tennessee courts have utilized the

---

[5] The City has raised a statute of limitations issue regarding the appellants' claims under 42 U.S.C. § 1983. Given the decision of the Court above, this issue is pretermitted.

-11-

standard set forth by the United States Supreme Court to determine whether a statute implies a private right of action. *Matthews v. Storgion*, 335 F.Supp.2d 878, 890 (W.D. Tenn. 2004). In that case, the Court observed that "[t]he touchstone of the analysis is legislative intent: whether the legislature intended in passing the statute to provide a private right of action." *Id.* (quoting *Ergon*, 966 F.Supp. at 583). The factors to consider include whether "1) the plaintiff is a member of the class intended to benefit from the statute, 2) there is any indication of a legislative intent to create a private right of action under the statute, and 3) a private cause of action is consistent with the underlying purposes of the legislation." *Id.*

Under the above test, the court must first look to the language of the statutory section for guidance. *Id.* (citing *Ergon*, 966 F.Supp. at 584). As stated by the Court in *Ergon*, "unless the legislative intent to create a private right of action 'can be inferred from the language of the statute, the statutory structure, or some other source, the essential predicate for implication of a private remedy simply does not exist.'" *Ergon*, 966 F.Supp. at 584 (quoting *Thompson v. Thompson*, 484 U.S. 174, 179, (1988)).
In the present case, neither the Charter nor the City Ordinance provisions at issue explicitly provide for a private cause of action for individual monetary relief or retroactive promotions for an alleged violation of these provisions. There is no enforcement mechanism specifically set forth in § 250.1 of the Charter or § 9-3 of the City Ordinances. *See Premium Finance*, 978 S.W.2d 93 (finding no private right of action, in part, where the statute at issue imposed a specific, mandatory duty but provided no enforcement mechanism for the duty).

Additionally, the respective Articles in which these sections exist do not provide for any method of enforcing the provisions § 250.1 of the Charter or § 9-3 of the City Ordinances. *See* Charter, Art. 34; Memphis Code of Ordinances, Art. 9. Finally, there is nothing explicit or implicit in either provision that indicates any intent to provide a private right of action for monetary relief or retroactive promotions to enforce these provisions. *Cf. Pratt v. Smart Corp.*, 968 S.W.2d 868, 872-73 (Tenn. Ct. App.1997) (finding that the Medical Records Act authorized a private cause of action by reason of the fact that it allowed for recovery of "actual damages" for willful or reckless violations). Thus, the language of the Charter and City Ordinance provisions does not support a private right of action for monetary relief or retroactive promotions.

Accordingly, although the Court has found Defendant to be in violation of the City Charter and Ordinances in its administration of the 2000 process, the Court finds that the remedies Plaintiffs seek are unavailable under the city laws.

*Johnson v. City of Memphis*, Nos. 00-2608 DP, 04-2017 DP, 04-2013 DA, 2006 WL 3827481, at *17-18 (W.D. Tenn. Dec. 28, 2006).

We find Judge Donald's reasoning to be compelling and likewise conclude that the City's

charter and ordinances do not provide the appellants with a private right of action for violations of the City's civil service provisions.

## IV

For the reasons stated above, the trial court's injunction and declaratory judgment are vacated as moot. The trial court's decision regarding damages is affirmed, and this case is remanded for any further proceedings as may be necessary. Costs of this appeal are taxed to the appellants and their surety for which execution may issue if necessary.

_____
WALTER C. KURTZ, SENIOR JUDGE