**Joel D. CURRY, et al.**

v.

**CITY OF HOHENWALD, et al.**

Court of Appeals of Tennessee,
at Nashville.

Oct. 13, 2006 Session.

Jan. 8, 2007.

Permission to Appeal Denied by
Supreme Court May 14, 2007.

290

Robert L. Huskey, Manchester, Tennessee, for the appellants, Joel D. Curry and Mary Lee (Peg) Curry.

Robert M. Burns and Hugh C. Gracey, III, Nashville, Tennessee, for the appellee, City of Hohenwald.

## OPINION

WILLIAM B. CAIN, J., delivered the opinion of the court, in which WILLIAM C. KOCH, JR., P.J., M.S., and FRANK G. CLEMENT, JR., J., joined.

Landowner filed action against city for injuries sustained when he stepped backwards onto defective water meter cover located in his front yard. Trial court dismissed the action having apportioned fault equally between parties as a result of landowner's admitted knowledge of dangerous condition. We reverse the allocation of fault and remand the matter for the determination of damages.

Mr. Joel Curry and his wife, Mrs. Peg Curry, have lived at 312 Vine Street in Hohenwald, Tennessee, since 1956. Since that time, there has been a city water meter in the front yard. Several years ago, Mr. Curry noticed that the metal cover on the meter box was broken. Mr. Curry thereafter called City Hall to report the condition while Mrs. Curry reported the condition to their local meter reader. The City of Hohenwald initially responded that it no longer had the particular cover which fit the Curry's meter but later, City personnel replaced the broken cover with a handmade lid. Mr. Curry complained to the City and to an employee of the City that the new handmade cover did not fit the meter properly and any pressure applied to the lid caused the lid to slip into the hole. Mrs. Curry also told the local meter reader on several occasions that the lid was defective. After some time without response from the City, Mr. Curry decided to place a plank of wood over the cover so that no one would step onto the lid and injure themselves.

On February 24, 2002, approximately one year after Mr. Curry reported the defective cover to the City, Mr. and Mrs. Curry decided to install a flag pole in their front yard. When Mr. Curry stepped backwards in order to survey whether the pole was straight, his left foot hit the defective cover of the meter box causing the lid to slip into the hole. As a result, his left leg fell two feet down into the hole and he injured both his legs.

On February 19, 2003, Mr. and Mrs. Curry filed an action against the City of Hohenwald, alleging that the City was liable under the Government Tort Liability Act for maintaining a defective and dangerous condition. After a bench trial on July 19, 2005, the court determined that the parties were equally responsible for Mr. Curry's injuries. Having apportioned

fault equally between the parties, the trial court dismissed the action and assessed costs against Plaintiffs. Plaintiffs appeal claiming that the trial court made an unreasonable allocation of fault based upon the undisputed facts.

## I.

■ The standard of review in a non-jury case is *de novo* upon the record with a presumption of correctness attributed to the trial court's findings of fact unless the evidence preponderates to the contrary. *Union Carbide Corp. v. Huddleston,* 854 S.W.2d 87, 91 (Tenn.1993). The standard of review on appeal as to the allocation of comparative fault is laid down by the Supreme Court in *Wright v. City of Knoxville,* 898 S.W.2d 177 (Tenn.1995). The standard was further delineated in *Cross v. City of Memphis,* 20 S.W.3d 642 (Tenn. 2000).

In *Cross,* the Supreme Court held:

Tennessee Rule of Appellate Procedure 13(d) provides:

Unless otherwise required by statute, review of findings of fact by the trial court in civil actions shall be de novo upon the record of the trial court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise.

In *Wright v. City of Knoxville,* 898 S.W.2d 177 (Tenn.1995), this Court examined a trial court's allocation of fault in a bench trial. With regard to this issue, the Court stated:

Although it is true that the trier of fact has considerable latitude in allocating percentages of fault to negligent parties, *see, e.g., Martin v. Bussert,* 292 Minn. 29, 193 N.W.2d 134 (1971), appellate courts may alter those findings if they are clearly erroneous. *Because this case was tried*

*without a jury, our review of the issues of fact is de novo on the record of the trial court.* However, we must presume that the trial court's findings were correct unless the preponderance of the evidence is otherwise. Tenn.R.App.P. 13(d).

*Id.* at 181 (emphasis added). The Court's analysis in *Wright* appears to contemplate two different standards of review: clearly erroneous and de novo.

Two years later, the Court of Appeals attempted to resolve this apparently contradictory language. In *Varner v. Perryman,* 969 S.W.2d 410 (Tenn.Ct. App.1997), the court distinguished the portion of *Wright* that suggests a clearly erroneous standard would apply to allocations of fault in a bench trial. The court observed that *Wright* cited to a jury case, *Martin v. Bussert,* in discussing the clearly erroneous standard. *See id.* at 411. In non-jury cases, though, the court concluded that the de novo standard of Rule 13(d) was controlling. *See id.*

While it would appear that Rule 13(d) addresses and answers the issue now before this Court, our opinion in *Coln v. City of Savannah,* 966 S.W.2d 34 (Tenn. 1998), has created some confusion with regard to the applicable standard of review. In *Coln,* this Court examined a trial court's allocation of fault. The Court cited Rule 13(d) but also quoted the "clearly erroneous" language from *Wright.* The Court applied Rule 13(d), however, in affording the trial court's findings a presumption of correctness. *See id.* at 45.

Accordingly, we clarify *Coln* to the extent that it appeared to permit an appellate court to apply a clearly erroneous standard of review to a trial court's findings of fact. Moreover, we limit the clearly erroneous language in *Wright* to

jury cases. We hold that the de novo standard of review in Rule 13(d) is the applicable standard of appellate review for findings of fact made by a trial court. Accordingly, we reverse the Court of Appeals with regard to the standard of review that is applied to a trial court's findings of fact.

In the interest of judicial economy and because the standard of review is de novo, we will also examine whether the trial court erred in allocating 100% fault to the City of Memphis and 0% fault to Cross. Our review is de novo upon the record. Tenn.R.App.P. 13(d). We presume the correctness of the trial court's findings of fact which will be set aside only if the preponderance of the evidence is otherwise. *See id.*

*Cross,* 20 S.W.3d at 644–45.

## II.

The sole issue presented to the Court on appeal concerns whether the trial court properly assessed the allocation of fault between the parties in this case based on the undisputed facts. In *Eaton v. McLain,* 891 S.W.2d 587 (Tenn.1994), the Tennessee Supreme Court provided a framework by which the trier of fact may apportion fault between negligent parties. The Court held:

[T]he percentage of fault assigned to each party should be dependent upon all the circumstances of the case, including such factors as: (1) the relative closeness of the causal relationship between the conduct of the defendant and the injury to the plaintiff; (2) the reasonableness of the party's conduct in confronting a risk, such as whether the party knew of the risk, or should have known of it; (3) the extent to which the defendant failed to reasonably utilize an existing opportunity to avoid the injury to the plaintiff; (4) the existence of a

sudden emergency requiring a hasty decision; (5) the significance of what the party was attempting to accomplish by the conduct, such as an attempt to save another's life; and (6) the party's particular capacities, such as age, maturity, training, education, and so forth.

*Eaton,* 891 S.W.2d at 592 (footnotes omitted).

In making its assessment of fault, the trial court weighed each of the factors set forth in *Eaton.* Said the court:

Since this Court has found both Plaintiff Joel Curry and Defendant City of Hohenwald to be at fault, the Court utilized the factors set forth in *Eaton v. McLain,* 891 S.W.2d 587 (Tenn.1995) in allocating the fault between Plaintiff Curry and Defendant City. In utilizing the *Eaton* factors, the Court found that the City's conduct was unacceptable in allowing the defective water meter cover to exist as long as it did. However, the Court also found that there was uncontradicted testimony that both Plaintiffs knew of and were aware of the risk caused by the water meter cover's condition. The Court further found that the Defendant City failed to take advantage of a reasonable opportunity in correcting the condition with the water meter cover so as to avoid injury, but the Court also found that Plaintiff Joel Curry also failed to utilize an opportunity to avoid stepping on the cover and so injuring himself. The Court found that *Eaton* factor # 4 and *Eaton* factor # 5 were both non-applicable to the evidence in this case. The Court finally found, under *Eaton* factor # 6, Plaintiff Joel Curry, when considering his age, education, maturity, etc., had the capacity to appreciate the existence of the risk created by the water meter cover. In light of these considerations, the Court found the City of Hohenwald to be fifty percent (50%)

at fault and Plaintiffs to be fifty percent (50%) at fault.

It appears that in equally allocating the negligence between the parties, the trial court was highly persuaded by Mr. Curry's admitted knowledge of the dangerous condition of the water meter cover. However, "the 'obviousness' of a condition or the fact that the injured party may have been in some sense 'aware' of it may not always serve as adequate warning of the condition and of the consequences of encountering it." *Ward v. K Mart Corp.,* 136 Ill.2d 132, 143 Ill.Dec. 288, 554 N.E.2d 223, 230 (Ill.1990). It is stated in Prosser & Keeton on Torts:

[I]n any case where the occupier as a reasonable person should anticipate an unreasonable risk of harm to the invitee notwithstanding his knowledge, warning, or the obvious nature of the condition, something more in the way of precautions may be required. This is true, for example, where there is reason to expect that the invitee's attention will be distracted, as by goods on display, or that after a lapse of time he may forget the existence of the condition, even though he has discovered it or been warned; or where the condition is one which would not reasonably be expected, and for some reason, such as an arm full of bundles, it may be anticipated that the visitor will not be looking for it.

W. Keeton, *Prosser & Keeton on Torts* § 61 (5th ed.1984).

The Restatement (Second) of Torts, section 343A (1965), also states that "[a] possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, *unless the possessor should anticipate the harm despite such knowledge or obviousness.*" (Emphasis added). Comment *f* of section 343A(1) explains that reason to ex-

pect harm to visitors from known or obvious dangers may arise "where the possessor has reason to expect that the invitee's attention may be distracted, so that he will not discover what is obvious, or will forget what he has discovered, or fail to protect himself against it."

In *Ward*, a customer sued a retail store for injuries he sustained when he collided with a five-foot-tall concrete post located near the exit of the store. 143 Ill.Dec. 288, 554 N.E.2d at 224. At the time of injury, plaintiff was carrying a large mirror which he had purchased from defendant. *Ward*, 143 Ill.Dec. 288, 554 N.E.2d at 224. When asked whether plaintiff saw the posts when he entered the store, plaintiff responded that he had subconsciously recognized the location of the posts.

Q. And you noticed these posts when you went inside did you not?

A. Subconsciously.

Q. Well, would it be fair to say that you noticed them more or less, sir?

A. More or less. Yes, sir.

Q. You didn't have trouble getting around those posts on the way in, did you, sir?

A. Not that I recall.

*Ward*, 143 Ill.Dec. 288, 554 N.E.2d at 225. Following a jury trial and a verdict in favor of plaintiff, the trial court entered judgment for defendant notwithstanding the jury's verdict on the grounds that defendant had no duty to warn plaintiff of, or otherwise protect him from, the risk of colliding with the post since the condition was open and obvious. *Ward*, 143 Ill.Dec. 288, 554 N.E.2d at 224. The appellate court affirmed the judgment of the trial court holding that defendant could not reasonably foresee that plaintiff would fail to see or remember the post, which was an obvious condition and which plaintiff had previously encountered. *Ward*, 143 Ill.

Dec. 288, 554 N.E.2d at 224. However, the Supreme Court of Illinois reversed finding that a defendant is not absolved from the duty to exercise reasonable care simply because a dangerous condition "may be labeled 'open and obvious' or of which the plaintiff is in some general sense 'aware'." *Ward*, 143 Ill.Dec. 288, 554 N.E.2d at 230.

The Court explained:

Attempting to dispose of litigation by merely invoking such relative and imprecise characterizations as "known" or "obvious" is certainly no adequate substitute for assessing the scope of the defendant's duty under the circumstances in accordance with the considerations previously identified by this court. *Kirk v. Michael Reese Hospital & Medical Center* (1987), 117 Ill.2d 507, 525, 111 Ill.Dec. 944, 513 N.E.2d 387; *Lance v. Senior* (1967), 36 Ill.2d 516, 518, 224 N.E.2d 231.

. . .

The scope of defendant's duty is not defined by reference to plaintiff's negligence or lack thereof. The focus must be on defendant. A major concern is whether *defendant* could reasonably have foreseen injury to plaintiff. *Cunis v. Brennan* (1974), 56 Ill.2d 372, 308 N.E.2d 617.

*Ward*, 143 Ill.Dec. 288, 554 N.E.2d at 230.

■ Although the trial court went through the factors listed in *Eaton* in assessing fault between the parties, we believe that the court incorrectly placed an inordinate amount of weight on the fact that plaintiff was admittedly aware of the dangerous condition prior to his injury. As we discussed above, knowledge of a dangerous condition or the fact that a condition is open and obvious does not necessarily preclude recovery, especially where a defendant has had notice of, and the

opportunity to correct, a defect for an appreciable amount of time. In this case, the City of Hohenwald should have anticipated an unreasonable risk of harm to the landowners despite their knowledge because there was good reason to expect that the landowners' attention may be distracted while using their yard or that after the lapse in time since the discovery of the condition, the landowners may forget the existence of the condition.

Hovering over this case and its almost undisputed facts is the totally undisputed fact that it is the duty of the City to maintain the water meter and not the landowner. The City had been on notice of the defective condition for more than a year and simply would not or did not undertake proper maintenance of its property. When considering comparative fault, we have a dangerous condition, which the City of Hohenwald has the duty to remedy, and the landowner has neither the duty nor the right to remedy. To allocate equal fault under these conditions is to require the plaintiff to be constantly alert to a dangerous condition while the party having the duty and the obligation to remedy the condition declines to do so.

Allowing the City of Hohenwald to escape liability as a result of Plaintiffs' knowledge would set a poor precedent and encourage public entities to avoid their statutory obligations by simply informing citizens of dangerous conditions rather than fixing the dangerous condition in the first instance. Although we afford great deference to the trial court as the finder of fact, we believe that under the facts of this case the evidence preponderates against the trial court's judgment. We therefore assign seventy-five percent (75%) fault to Defendant, City of Hohenwald, and twenty-five percent (25%) fault to Mr. Curry. *See Wright,* 898 S.W.2d at 181 and *Cross,* 20 S.W.3d at 644–45. The decision of the trial court is reversed and the case is remanded to the trial court to determine the appropriate amount of damages. The costs of appeal are assessed against Appellee, the City of Hohenwald.