IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
May 11, 2010 Session

## PAMELA C. BESS v. PROPERTIES, L.P. ET AL.

### Appeal from the Circuit Court for Grundy County
No. 7740     Buddy D. Perry, Judge

### No. M2008-01691-COA-R3-CV - Filed June 11, 2010

Car A was traveling north on a two-lane highway. Car B, a city police vehicle with its lights and siren on, was also traveling north on the same highway to answer a call. Car A could not pull off the road to the right to yield to Car B and instead turned left as Car B was passing. A collision ensued in which the driver of Car A suffered serious injuries. The driver of Car A sued the city. The trial court found the city 75% liable for the accident. The city appealed. We reverse the trial court's judgment, finding the driver of Car A more than 50% responsible for the accident.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which PATRICIA J. COTTRELL, P.J., M.S., and FRANK G. CLEMENT, JR., J., joined.

Ronald D. Wells, Stacy Lynn Archer, and B. Elizabeth Dickson, Chattanooga, Tennessee, for the appellant, Properties, L.P, d/b/a City of Gruetli-Laager.

Hugh Pierce Garner, Chattanooga, Tennessee, for the appellee, Pamela C. Bess.

### OPINION

#### BACKGROUND

This case arises from an automobile accident which occurred May 22, 2005, on a straight section of Highway 108 in Grundy County. At about 1 a.m., Pamela Bess was driving north on Highway 108, which is a two-lane highway. It was a clear, dry night. Gruetli-Laager Police Department Officers Randy King and Jason Layne, responding to a

call about an adult "making trouble" for juveniles in the parking lot of the L&L Market,[1] were in a patrol car which was also traveling northward on Highway 108.

The officers turned on their siren and emergency lights. Bess saw them, put on her right turn signal, and began looking to pull over to the right side of the road. However, a ditch and other obstacles prevented her from getting off the road on the right-hand side. While testimony conflicted about the speed of the police car, Bess testified that she was going between 40 and 45 miles per hour and that the police car was going faster than she was and was coming up behind her rapidly.

With nowhere to go on the right, Bess decided to turn left into a church parking lot. Testimony conflicted as to whether she turned on her left turn signal. She testified: "I assumed I had more time to get over there [to the church parking lot]. He was like a half a car or a car length behind and then all at once, boom." The impact of the vehicles pushed Bess's car into a utility pole. The police car rolled over approximately five times before coming to rest. Bess received multiple, serious injuries.

Bess sued Gruetli-Laager. A bench trial was held on May 22, 2008. The trial court found the city 75% at fault and Bess 25% at fault. The court awarded Bess a judgment of $1,875,000.00.[2] Gruetli-Laager appealed, maintaining that Bess was at least 50% at fault.

STANDARD OF REVIEW

This court reviews the findings of fact of the trial court de novo with a presumption of correctness unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); *Curry v. City of Hohenwald*, 223 S.W.3d 289, 292 (Tenn. Ct. App. 2007). The trial court's conclusions of law are reviewed de novo without a presumption of correctness. *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993).

---

[1] The L&L Market was about twenty feet beyond the Gruetli-Laager city limits. Testimony indicated that Gruetli-Laager officers were allowed to respond to calls within one mile of the city limit. The dispatch actually went to the county, but the officers were nearby and decided to respond. This was not uncommon.

[2] There is some dispute over the interaction of the statutory liability limit of $250,000.00 and the availability of excess insurance coverage. That issue, however, is not before this court.

ANALYSIS

As far as the accident is concerned, the trial court's Final Judgment found only that the city was 75% at fault and Bess was 25% at fault. No specific factual findings were made concerning who did what when. Therefore, we must examine the record.

The key factual question is the location of the police car when Bess began her turn to the left. Bess testified that when she began the turn, the police car was half a car or a car length behind her in the northbound lane. Layne testified:

> Once we started coming in behind it, I remember her brake - - she hit her brake lights and then she yielded. Once she yielded and then we accelerated and came on around her. Once we started approaching the rear end of her car, she just cut it - - I mean, just - - I just remember her car just cutting right in front of us.

While Bess's attorney raised questions about Layne's testimony,[3] two witnesses discussed the physical evidence left on the road – tire marks. Trooper Charlie Harris arrived at the accident scene within an hour of the accident. He found "some skid marks from the patrol vehicle and some brake marks from the patrol vehicle and slide marks from Ms. Bess' vehicle." The following exchange is instructive:

Q     Based on what you saw and observed that night, did those [marks] appear to come from the police vehicle?

A     Yes, sir. It appears that they had braked and then released the brakes and then reapplied the brakes or the pressure was definitely relieved because there was a break in the brake marks. So it's not consistent, continuous braking. It looks more like brake, hit them hard, and let off to - - for whatever reason and then got back on them again.

Q     Describe for Judge Perry where those brake marks were located in the roadway.

A     The brake marks, Your Honor, as you can see from the diagram, are in the opposite lane where they pulled out into the - - they were headed north. It would be southbound lane.

---

[3]It seems Layne had told others he did not remember the accident, yet at trial he testified in detail.

-3-

Q      Passing lane?

A      The passing lane. That would have been where they would have made it to the southbound to pass was where the brake marks were found.

Q      The brake marks that you have drawn on there, how would you characterize them as being straight or curved or at an angle?

A      Slight angle. It appears that the first ones are parallel with the road. And then the second after the brake it seems to be going to the left, more to the - - it would be east. It was east.

Q      Would it be fair to say, though, that that first set of brake marks indicated that the police car was going straight?

A      Straight, yes, sir.

In Harris's view, "Both vehicles were traveling northbound on 108. The patrol vehicle attempted to pass. Ms. Bess made a left turn and Vehicle Two, patrol vehicle collided into the driver's [side] of Ms. Bess' vehicle."

Johnny Mack Parker also investigated the accident site although his examination was ten months later. He is a Winchester court security officer who does investigative work on the side. He testified that the only skid marks on the road at the accident scene were in the southbound lane of Highway 108. He found that the "[a]ctual skid marks that I measured and recorded was [sic] approximately 27 feet of skid marks and then scuffed skid and scuff marks. There was approximately 11 and a half feet of faded scuffed skid marks on it." Parker offered no interpretation of the accident.

"Established physical facts are controlling over direct testimony when it is impossible to reconcile the physical facts with the direct testimony." *Gordon's Transps., Inc. v. Bailey*, 294 S.W.2d 313, 327 (Tenn. Ct. App. 1956). This rule "only applies when there can be no dispute as to the physical facts and they are such that only one set of inferences can be drawn therefrom, *and those inferences necessarily overcome entirely the direct testimony.*" *McCray v. Hughes*, 385 S.W.2d 124, 126 (Tenn. Ct. App. 1964) (emphasis in original). There is no dispute as to the physical evidence. The first skid marks made by the police car were in the southbound, passing lane. They were parallel to the road, indicating that the police car was going straight when the driver decided there was a need for a rapid deceleration. Thus, it was not possible that the police car was in the northbound lane, one half or one car length behind Bess when she began to turn, as she testified.

Bess knew the police car was behind her. Its lights were flashing and the siren was on. She knew it was traveling faster than she was. What she obviously did not know was exactly where the police car was when she began her left turn. Thus, in light of all the circumstances, Bess was negligent.[4] She had a duty to yield;[5] she did not do so and caused damages. Her failure to properly locate the police car before she turned left was the cause of the accident. We are not unmindful of the serious injuries Bess sustained or the prolonged and painful period of recovery. We are, however, bound by the facts, which show a majority of the fault lies with Bess.

CONCLUSION

We find that the evidence preponderates against the determination of the trial court and that Bess was over 50% at fault. Therefore, she is not entitled to recover. *McIntyre v. Balentine*, 833 S.W.2d 52, 57 (Tenn. 1992). The judgment of the trial court is reversed. Costs of appeal are assessed against Bess, the appellee, for which execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE

---

[4]The elements of a negligence claim are "(1) a duty of care owed by the defendant to the plaintiff; (2) conduct falling below the applicable standard of care amounting to a breach of that duty; (3) an injury or loss; (4) causation in fact; and (5) proximate, or legal cause." *Bradshaw v. Daniel*, 854 S.W.2d 865, 869 (Tenn. 1993) (citing *McClenahan v. Cooley*, 806 S.W.2d 767, 774 (Tenn. 1991)).

[5]*See* Tenn. Code Ann. § 55-8-132.