# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
October 3, 2012 Session

## KENNETH E. KING v. ANDERSON COUNTY, TENNESSEE

**Appeal from the Circuit Court for Anderson County**
**No. B0LA0397      Donald R. Elledge, Judge**

---

**No. E2012-00386-COA-R3-CV-FILED-NOVEMBER 29, 2012**

---

Kenneth E. King was arrested for driving on a revoked license. He was put in a cell with several violent criminals. At his arraignment, the court ordered him released. The person charged with processing the release delayed his release by simply doing nothing. While awaiting his release, Mr. King was assaulted by one of his cellmates. He sustained serious injuries, including partial loss of vision in one eye. He filed this action against Anderson County ("the County"). After a bench trial, the court found the County 55% at fault and King 45% at fault for provoking the assault. It determined that the total damages were $170,000 reduced to $93,500 to account for King's comparative fault. The County appeals. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the Court, in which D. MICHAEL SWINEY and JOHN W. MCCLARTY, JJ., joined.

Jonathan Swann Taylor, Knoxville, Tennessee, for the appellant, Anderson County, Tennessee.

Bruce D. Fox and John A. Willis, Clinton, Tennessee, and Ronald C. Koksal, Knoxville, Tennessee, for the appellee, Kenneth E. King.

## OPINION

### I.

The trial court made extensive findings of fact in this case, which are set forth in a 52-page opinion dictated from the bench. In that lengthy opinion, the court discussed the

testimony of each witness. That amount of detail will not be necessary in this opinion. In its brief, the County "accepts and adopts the trial court's findings of fact as set forth in [the transcribed opinion]." The County only challenges the finding of negligence on the part of the County and the allocation of more fault to the County than the plaintiff. A summary of the key facts will suffice to discuss the County's contentions.

On October 27, 2009, Mr. King was stopped by an Anderson County deputy sheriff after he "pulled out in front of" the deputy. Also, it was raining in daylight hours and Mr. King did not have his lights on. The deputy performed a routine check of Mr. King's license. Records showed that his license had been revoked. The court in the present action found that there had been a clerical error resulting from a prior citation for driving on an expired license and without insurance. Mr. King "got his license" and insurance which resulted in the prior citation being dismissed. However, the information was not "sent in correctly to the state." Thus, state records still showed that the prior charge was unresolved and that Mr. King's license was revoked.

The deputy arrested Mr. King and took him to the Anderson County detention facility for booking, where he arrived at 6:20 p.m. He was assigned to medium security housing based upon information on the intake form showing he was verbally abusive and uncooperative at arrest. Mr. King arrived at his cell at 12:25 a.m. There were six other individuals in the cell, including several who were charged with violent crimes. One of those cellmates was Mr. Brandon Paul who would later attack Mr. King. Paul was awaiting trial on charges of attempted murder for striking a person with a brick and slashing that person with a knife.

About 8:30 on the morning of October 28, 2009, Mr. King was moved out of the cell and prepared for transport to court. At the arraignment, the clerical mistake regarding Mr. King's license was revealed. The court, at approximately 11:00 a.m., signed an order that Mr. King be released. The County employee in charge of pretrial release, Ms. Terri McCloud, received the release order at 11:30 a.m. She did nothing for approximately three hours and forty-five minutes even though pretrial release was her only duty and Mr. King was the only prisoner to be released that day. County policy requires the timely release of inmates once release is ordered. The County's expert admitted at trial that the County had a duty to release Mr. King in a timely fashion, and that it took the County too long to release him.

At 12:04 p.m. on October 28, Mr. King was transported back to the detention facility from the courthouse. He had no property in the cell, so he was initially placed in the booking area to await release. He was served lunch in the booking area. At 2:33 p.m. he was taken back to cell 306G, the same cell where he had been held the night before. The court found

that Mr. King did two things that had the effect of provoking the violent assault by inmate Paul. He told his cellmates that he had been arrested on a drug charge. Inmates are forbidden from discussing their charges with fellow inmates. It is undisputed that prisoners will "shake down" a fellow prisoner for drugs. Also, Mr. King "cussed" Mr. Paul, telling Paul that he, King, did not "give a F what he [,Paul,] thought."

Mr. King was the only trial witness to give an account of the assault. The court found that Mr. King was not credible in many respects, including the exact manner in which the situation developed. Mr. King claimed he did nothing to provoke the attack but, as we have stated, the court found otherwise. The court also found that even though Mr. King clearly sustained serious injuries, he exaggerated the injuries in his testimony. The court stated that it could not make a finding as to who struck the first blow. Nevertheless, the court did accept that Mr. King sustained injuries from Mr. Paul that include a broken nose and a blowout fracture to his right eye, both of which required extensive surgery and metal plates to repair. The surgical repairs included essentially reconstructing the socket for Mr. King's eye. He sustained a permanent partial loss of vision in that eye. The court also found that Mr. King was stripped, fondled, and that his rectum was penetrated. The local newspaper reported the incident as a sexual assault. The trial court determined that Mr. King sustained $20,000 in damages related to the emotional anguish from these injuries.

Mr. King filed this action against the County. The complaint alleges that the County was negligent in classifying him in medium security as opposed to a lesser classification, housing him with violent criminals, and in supervising the inmate population. It also alleges that the County was negligent in not timely releasing Mr. King. The complaint alleges that the County is liable under the Governmental Tort Liability Act ("the GTLA"), Tenn. Code Ann. § 29-20-101 et seq. (2000) and 28 U.S.C. § 1983. The County removed the case to federal court. The federal court remanded the GTLA claim to the trial court. On remand, the court conducted a bench trial and entered a judgment which incorporated the findings that we discussed earlier in this opinion.

The court found that "the jail did nothing wrong." This was because, "[p]roper classification, housing and supervision was made by the jail." However, the court did find "Anderson County at [fault]."[1] The finding was based on the fact that "the pretrial release program is a program of Anderson County" . . . . and that "even by . . . the [County's] expert . . . waiting . . . approximately three hours and 45 minutes to be released is too long to wait."

_____

[1] The court reporter apparently made some sort of global edit or had some software glitch that resulted in the word "fault" mistakenly appearing in the transcript as the word "facility." Also, the word "see" appears in print as the word "seize." For the remainder of our opinion, we will make the appropriate editorial changes without the use of brackets.

The court specifically noted that no proof was submitted "that gives any excuse for why Terri McCloud did not show up for three hours and 45 minutes or thereabouts." Terri McCloud did not testify. The court further found that if Mr. King had been released in "two hours this wouldn't have happened." The court explained further

> that there's two causes for us being here today. One is the direct action of Mr. King, one is the inaction of Terri McCloud as the pretrial release officer, actually the one who was running the pretrial program at the time. . . .
>
> When comparing the fault, and I do find fault with Mr. King as I've already said. When comparing the fault I find that Anderson County is more at fault. But I'm not finding it by much. I'm looking at 55 percent Anderson County, 45 percent for Mr. King.

As previously stated, the court set Mr. King's damages at $170,000 before apportionment. Further, based upon a stipulation of the parties and the pertinent statute, the court held the county responsible for Mr. King's medical expenses in the sum of $42,317.34 "not reduced by the percentage of fault for this reimbursement." The County filed a timely notice of appeal from the judgment entered on the court's findings.

## II.

The County raises the following issues, as taken verbatim from its brief:

> Whether the trial court erred in finding that [the County] was negligent and that such negligence was a proximate cause of the injuries sustained by Plaintiff in a fight that occurred in the Anderson County Detention Facility.
>
> Whether there is material evidence to support the trial court's finding that [the County] was more at fault than Plaintiff.

## III.

The standard by which we must review a trial court's determination of negligence and its apportionment of fault where more than one party is at fault has been the subject of considerable discussion. *See Cross v. City of Memphis*, 20 S.W.3d 642, 644-45 (Tenn. 2000); *Curry v. City of Hohenwald*, 223 S.W.3d 289, 291-92 (Tenn. Ct. App. 2007). It is

-4-

now, however, perfectly clear that the standard is the same as for any finding of fact by a court sitting without a jury; we review these findings as findings of fact, and presume they are correct unless the evidence preponderates against them. Tenn. R. App. P. 13(d); *Cross*, 20 S.W.3d at 645; *Curry*, 223 S.W.3d at 292. If we find that the evidence preponderates against the trial court's apportionment of percentages of fault, we are able to set the percentages according to the preponderance of the evidence. *Cross*, 20 S.W.3d at 645.

IV.

The County argues that the trial court erred in finding that it was negligent because, according to the County, the element of proximate cause is missing. The County argues that proximate cause is missing because it had no reason to anticipate the attack on Mr. King. The County relies heavily on three unpublished cases which they construe to stand for the proposition that an attack on an inmate is not foreseeable as a matter of law unless there is something specific to give the housing institution reason to anticipate an attack. *See Harvey v. Dickson County*, M2007-01793-COA-R3-CV, 2008 WL 2165958 at *2 (Tenn. Ct. App. M.S., filed May 21, 2008); *Hanks v. State*, 02A01-9810-BC-00295, 1999 WL 454459 at *3 (Tenn. Ct. App., filed July 2, 1999); *Gillespie v. Metro Gov't.*, 01A01-9109-CV-00317, 1992 WL 9441 at *1 (Tenn. Ct. App., filed Jan. 24, 1992).

The County's reliance on the cited cases is misplaced. The County's cases all turned on whether there was a duty on the part of the institution to provide added security or somehow segregate inmates. The duty in the present case that was breached, as the trial court found, was *the duty to timely release Mr. King pursuant to the arraigning court's order that he be released*. This may, at first glance, appear to be a distinction without a difference but it is not. The absence or existence of a duty is a question of law. *Hale v. Ostrow*, 166 S.W.3d 713, 716 (Tenn. 2005). "To determine whether a particular defendant owes a duty of care to a particular plaintiff, we balance the foreseeability and gravity of the potential harm against the feasibility and availability of alternatives that would have prevented the harm." *Id*. In light of this test for a legal duty, it is easy to see that the institutions charged with housing the criminals who were injured and the criminals who caused the injuries in *Harvey*, *Hanks*, and *Gillespie*, had limited "alternatives that would have prevented the harm." *Hale*, 166 S.W.3d at 716. On the other hand, in the present case, all that was necessary to prevent the harm to Mr. King was to release him as the court in charge of his arraignment had ordered. That is exactly the duty the trial court in the present case found to have been breached after hearing the proof.

We also perceive in the case law a marked difference between the foreseeability necessary to impose a duty in the first place and the foreseeability necessary to support a finding of proximate cause. With respect to the issue of duty, the law, in utilizing a

balancing test, may require that, before a duty is imposed upon a defendant, that party must be shown to have had notice that an injury was imminent, even in those cases where the harm to be anticipated in a given situation is great, but the available alternatives that will prevent the harm are few to nonexistent. ***Id.***; ***Harvey*** at \*2. Unlike the duty question, the existence or lack of proximate cause is a question for the trier of fact. ***Hale***, 166 S.W.3d at 718. The proximate cause element exists to allow the trier of fact to put a "limit on the causal chain, such that, even though the plaintiff's injury would not have happened but for the defendants' breach, defendants will not be held liable for injuries that were not substantially caused by their conduct or were not *reasonably foreseeable* results of their conduct." ***Id***. at 719 (emphasis added).

Proximate cause is addressed with a three-pronged test:

> (1) the tortfeasor's conduct must have been a "substantial factor" in bringing about the harm being complained of; and (2) there is no rule or policy that should relieve the wrongdoer from liability because of the manner in which the negligence has resulted in the harm; and (3) the harm giving rise to the action could have reasonably been foreseen or anticipated by a person of ordinary intelligence and prudence.

***Id***. (*quoting* ***Haynes v. Hamilton County***, 883 S.W.2d 606, 612 (Tenn.1994)). In the context of proximate cause, the foreseeability requirement

> is not so strict as to require the tortfeasor to foresee the exact manner in which the injury takes place, provided it is determined that the tortfeasor could foresee, or through the exercise of reasonable diligence should have foreseen, the general manner in which the injury or loss occurred. The fact that an accident may be freakish does not per se make it unpredictable or unforeseen. It is sufficient that harm in the abstract could reasonably be foreseen.

***Willis v. Settle***, 162 S.W.3d 169, 181 (Tenn. Ct. App. 2004)(citations and quotation marks omitted) (*quoting* ***McClenahan v. Cooley***, 806 S.W.2d 767, 775 (Tenn.1991)).

The County argues the trial court found that the injury to Mr. King was not foreseeable. The County relies on the trial court's finding that this was a "spur of the moment" attack that could not be anticipated, brought on partly by Mr. King's agitation and

his false claim to the other inmates that he had been arrested on drug charges. We construe the court's comments as relating to the duty of the facility to segregate Mr. King in housing or provide additional security. As we have shown in our discussion thus far, the degree of foreseeability necessary to establish a duty under a particular set of circumstances can be higher than the degree to support a finding of proximate cause. The trial court did not articulate a specific finding as to proximate cause from the failure to release Mr. King; however, such a finding is implicit in the court's other findings. The court found that the attack would not have happened if Mr. King had been released in a timely manner. It also found that "[j]ails are a dangerous place" where "fights can occur even if [inmates are] supervised and classified properly." The record in this case shows that several of the prisoners in cell 306G were charged with violent crimes; Mr. Paul was charged with attempted murder. In the absence of an explicit finding by the trial court that injury to Mr. King was foreseeable from leaving him in the cell with dangerous men an unreasonable amount of time after the release order was given, we make our own finding that the evidence preponderates in favor of a finding that the injury was reasonably foreseeable and that proximate cause exists. *See **Kesterson v. Varner***, 172 S.W.3d 556, 566 (Tenn. Ct. App. 2005)(this court cannot afford a presumption where there are no findings; review in that situation is de novo for the preponderance of the evidence).

We move now to the apportionment issue. The County contends that the evidence preponderates against[2] the trial court's apportionment of 55% of the fault to the County. The County asserts that Mr. King's indication at intake that he had no enemies in the facility as well as "evidence of King's own aggression and disrespectful behavior coupled with the evidence that King was properly classified, housed, and supervised during his time at the Detention Facility clearly weighs heavily in favor of finding that King himself was more at fault for his injuries than [the County]." We reiterate that the duty the County breached was not in terms of classification, housing, or supervision. The duty that the County breached was the duty to release Mr. King in a timely fashion. Even though the court found that Mr. King was at fault for falsely stating he was in jail on a drug charge and for his antagonism of inmate Paul, it also recognized that it could not determine exactly how and why the altercation broke out. In other words, even though the court assigned some fault to Mr. King, it is unclear exactly what the link is between Mr. King's actions and the injuries he sustained. On the other hand, it is crystal clear that had Mr. King been released before he was put back in the cell at approximately 2:33 p.m. his injuries would not have occurred. Further, the trial court expressed some understanding as to why Mr. King would be agitated over being forced to remain in jail for charges that had been resolved, but found "no excuse" for the County's

---

[2]The County phrases their argument in terms of "material evidence." The correct standard is preponderance of the evidence. ***Cross***, 20 S.W.3d at 645. We have treated the argument as if it were phrased in terms of the correct standard.

delay, by and through the inaction of Terri McCloud in failing to release Mr. King. We have reviewed the record in light of the factors by which comparative fault is determined.[3] We hold that the evidence does not preponderate against the trial court's finding that the County's share of the total fault is 55%.

V.

The judgment of the trial court is affirmed. Costs on appeal are taxed to the appellant, Anderson County, Tennessee. This case is remanded, pursuant to applicable law, for enforcement of the judgment and for collection of costs assessed by the trial court.

_____
CHARLES D. SUSANO, JR., JUDGE

---

[3] In *Eaton v. McLain*, 891 S.W.2d 587, 592 (Tenn. 1994), the Supreme Court discussed the relevant factors. It stated that

> the percentage of fault assigned to each party should be dependent upon all the circumstances of the case, including such factors as: (1) the relative closeness of the causal relationship between the conduct of the defendant and the injury to the plaintiff; (2) the reasonableness of the party's conduct in confronting a risk, such as whether the party knew of the risk, or should have known of it; (3) the extent to which the defendant failed to reasonably utilize an existing opportunity to avoid the injury to the plaintiff; (4) the existence of a sudden emergency requiring a hasty decision; (5) the significance of what the party was attempting to accomplish by the conduct, such as an attempt to save another's life; and (6) the party's particular capacities, such as age, maturity, training, education, and so forth.

(Footnotes omitted).