IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
December 5, 2018 Session

## JERRY COX v. WATER AND WASTEWATER TREATMENT AUTHORITY OF WILSON COUNTY, TENNESSEE

**Appeal from the Circuit Court for Wilson County**
**No. 2017cv66        Clara W. Byrd, Judge**

———————————————————

### No. M2018-00433-COA-R3-CV

———————————————————

While a homeowner was standing on the water meter box in his yard, the concrete cover on the box moved unexpectedly, and the homeowner was injured. The homeowner sought compensation for his injuries from the county water authority. The water authority denied it had prior notice that the water meter box was dangerous or defective and alleged the comparative fault of the homeowner. After a bench trial, the trial court found the water authority had actual notice of the dangerous or defective condition of the water meter box and failed to take appropriate action. The court allocated 100% of the fault to the water authority and awarded the homeowner both economic and noneconomic damages. The water authority challenges the trial court's findings on liability, comparative fault, and the amount of noneconomic damages. The water authority also claims that the trial court made several procedural errors. We conclude that the evidence does not preponderate against the trial court's factual findings. Discerning no reversible error, we affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and ANDY D. BENNETT, J., joined.

Jeffrey R. Thompson and Gina S. Vogel, Knoxville, Tennessee, for the appellant, Water and Wastewater Treatment Authority of Wilson County, Tennessee.

Hugh Green, Lebanon, Tennessee, for the appellee, Jerry A. Cox.

# OPINION

## I.

### A.

On a frosty February morning, Jerry Cox was scraping ice off the windows of his truck before his drive into work. To reach one of the windows, Mr. Cox had to step onto the concrete cover over the water meter in his yard. While he was standing there, the cover fell into the box beneath it. As a result, Mr. Cox fractured a bone in his foot.

Mr. Cox filed a complaint against the Water and Wastewater Treatment Authority of Wilson County, Tennessee ("Water Authority") in the Circuit Court for Wilson County. The complaint alleged that the Water Authority had actual and/or constructive notice that the water meter box was in an unreasonably dangerous, defective, and unsafe condition and that the company failed to alleviate or warn of the danger. The Water Authority denied responsibility and raised the defense of comparative fault.

On December 15, 2018, the Water Authority moved for summary judgment. The motion was set to be heard on January 19, less than a week before trial. Mr. Cox moved to strike the motion because a local rule of court required all summary judgment motions to be heard at least sixty days before trial. Local Rule § 9.05 of the 15th Jud. Dist. The trial court struck the Water Authority's motion from the record, and the case proceeded to trial.

### B.

Mr. Cox's water meter was housed in a box made of a heavy-duty composite plastic. Plastic meter boxes like Mr. Cox's were in use throughout Wilson County. According to several Water Authority employees, plastic meter boxes were safe and durable. Some had been in use for over twenty years without experiencing any problems. But these same witnesses agreed that concrete meter boxes were stronger and sturdier. And at some point in the last decade, the Water Authority had made the decision to switch to concrete meter boxes. So for approximately ten years, the Water Authority had installed concrete meter boxes in all new construction. The Water Authority replaced existing plastic meter boxes only if a leak was discovered or the box was otherwise damaged.

The Water Authority witnesses acknowledged that plastic meter boxes were routinely damaged by lawn mowers, tractors, and other equipment. The Water Authority replaced hundreds of damaged plastic boxes each year. Sometimes the customer notified the Water Authority that a meter box had been damaged. And sometimes the meter reader discovered and reported a damaged box.

2

Mr. Cox's meter box had been in use since at least 2004. Until his accident, Mr. Cox had never contacted the Water Authority to report a problem with his water meter box or cover. Still, the Water Authority had replaced the cover on Mr. Cox's meter box twice before the accident. The first replacement cover was plastic; the second, concrete. The Water Authority witnesses explained that it was not uncommon for a concrete cover to be used with a plastic meter box. The two covers, while made of different materials, were interchangeable. And the plastic box was strong enough to handle the weight of the concrete cover.

After Mr. Cox's accident, the Water Authority replaced his plastic box with a new concrete box and cover. A large part of the lip or ridge that held the cover in place was damaged in Mr. Cox's box. Mr. Cox claimed that the employee told him that the box should have been replaced sooner. At trial, the employee could not recall making that statement.

Mr. Cox brought the damaged box to court. The Water Authority had retained the concrete cover. So he also brought pictures he had taken of the damaged plastic box with his new concrete cover balanced somewhat precariously on top. The Water Authority brought an undamaged plastic box with a plastic cover as a visual aid. A simple comparison of the two boxes revealed the extent of the damage to Mr. Cox's meter box.

The Water Authority maintained that it had no notice before the accident that Mr. Cox's water meter box was dangerous or defective. But on October 22, 2015, four months before the accident, the Water Authority's field supervisor had submitted a work order for Mr. Cox's water meter box to be replaced. The work order remained pending at the time of the accident because the Water Authority assigned it a low priority.[1]

At trial, the field supervisor denied that he knew in October that Mr. Cox's meter box was unsafe. He had noticed a piece was missing from one corner of the box, creating a noticeable gap.[2] And he submitted the work order because he feared that the water meter could freeze, not because of safety concerns. Still, he was forced to concede that he knew that the box was damaged and should be replaced.

---

[1] The Water Authority manually processed work order requests. Leaks and new construction were given top priority. The remaining plastic boxes were replaced in order of the severity of the damage.

[2] The meter reader who read Mr. Cox's water meter for the next few months also acknowledged that a corner had been missing from the box.

Two Water Authority witnesses opined that Mr. Cox had damaged the meter box when driving his truck across his yard. But they did not produce any evidence to support their opinions. And Mr. Cox categorically denied having driven over the meter box.

Mr. Cox had fractured a bone in his left foot, which required surgery to repair. He incurred $54,819.59 in medical bills. He submitted as evidence the deposition of Dr. Roy Terry, the orthopedic surgeon who treated his injuries. Dr. Terry opined that Mr. Cox's medical bills were reasonable and necessary. Before trial, the Water Authority sought to exclude Dr. Terry's testimony about the medical bills from other providers. The court ultimately denied the Water Authority's motion in limine.

Testimony from Mr. Cox and Dr. Terry revealed that the injury to Mr. Cox's foot adversely affected his left knee, causing him to develop a permanent limp. His injury also limited his ability to work and to enjoy activities with his son. He testified to the difficulties he had experienced since the accident with walking and climbing. And his physician had recommended another surgery to relieve his continuing pain.

At the conclusion of the trial, the court announced its findings and conclusions from the bench. The trial court found the Water Authority had actual notice that Mr. Cox's water meter box was damaged and failed to take appropriate action. The court also found that the Water Authority had not proven its allegations of comparative fault. The court awarded Mr. Cox a judgment against the Water Authority in the total amount of $117,319.59, comprised of $54,819.59 in economic damages and $62,500 in non-economic damages. The court's oral ruling was later incorporated into a written order.

## II.

The Water Authority raises six issues on appeal. Three issues relate to procedural matters both before and after trial. Specifically, the Water Authority contends the trial court erred in refusing to consider its motion for summary judgment, denying its motion in limine, and adopting the proposed findings of fact and conclusions of law prepared by Mr. Cox's counsel. The remaining issues concern the sufficiency of the evidence underlying the trial court's factual findings on liability, comparative fault, and the amount of noneconomic damages. We begin with the procedural issues.

### A.

1. Motion for Summary Judgment

The trial court struck the Water Authority's motion for summary judgment from the record because it was not filed in accordance with the court's local rules. Local Rule § 9.05 of the Fifteenth Judicial District requires summary judgment motions to be heard

at least sixty days before trial. The Water Authority's motion was set for hearing less than a week before trial.

"[L]ocal trial courts are empowered to enact and enforce local rules as long as those rules do not conflict with general law." *Tigg v. Pirelli Tire Corp.*, 232 S.W.3d 28, 35 (Tenn. 2007). The Water Authority does not claim that the local rule is invalid. Rather, it contends that the trial court should have waived the rule. We review a trial court's decision to enforce a local rule for an abuse of discretion. *Dantzler v. Dantzler*, 665 S.W.2d 385, 387 (Tenn. Ct. App. 1983). We will not reverse the trial court's decision "absent the clearest showing of an abuse of discretion . . . that . . . was the clear cause of a miscarriage of justice." *Estate of Wilson v. Arlington Auto Sales, Inc.*, 743 S.W.2d 923, 928 (Tenn. Ct. App. 1987) (quoting *Killinger v. Perry*, 620 S.W.2d 525, 525 (Tenn. Ct. App. 1981)).

We find no abuse of discretion or miscarriage of justice here. The Water Authority maintains that discovery disputes impeded its ability to file the motion any sooner. That may be true, but it does not require waiver of the local rule. And enforcing the local rule did not preclude the Water Authority from arguing it was entitled to a judgment at trial.

2. Motion in Limine

The Water Authority next argues that the trial court erred in denying its motion in limine because Dr. Terry was not qualified to testify that the medical bills from other providers were reasonable and necessary. We review a trial court's evidentiary decisions for an abuse of discretion. *See Biscan v. Brown*, 160 S.W.3d 462, 468 (Tenn. 2005).

"A physician who is familiar with the extent and nature of the medical treatment a party has received may give an opinion concerning the necessity of another physician's services and the reasonableness of the charges." *Dedmon v. Steelman*, 535 S.W.3d 431, 438 (Tenn. 2017). A physician is qualified to give an opinion about services and charges if the physician demonstrates "(1) knowledge of the party's condition, (2) knowledge of the treatment the party received, (3) knowledge of the customary treatment options for the condition in the medical community where the treatment was rendered, and (4) knowledge of the customary charges for the treatment." *Id.* But specific testimony as to these requirements is not necessary. *See Wells ex rel. Baker v. State*, 435 S.W.3d 734, 743 (Tenn. Ct. App. 2013) (noting that a physician's "curriculum vitae and her deposition testimony highlight her familiarity with neurosurgery services as well as those particular services provided to [the plaintiff]").

Here, the court did not abuse its discretion. Dr. Terry treated Mr. Cox after the accident and most of Mr. Cox's medical bills were for services performed or ordered by Dr. Terry. Dr. Terry also expressed familiarity with the treatment Mr. Cox received from

5

other medical professionals and the customary charges for those services. *See Wells*, 435 S.W.3d at 743-44.

### 3. The Party-Prepared Judgment

The Water Authority also complains that the trial court erred in adopting the proposed findings of fact and conclusions of law submitted by Mr. Cox's counsel. Appellate courts generally approve the trial court's use of a counsel-prepared order as long as two conditions are satisfied. "First, the findings and conclusions must accurately reflect the decision of the trial court. Second, the record must not create doubt that the decision represents the trial court's own deliberations and decision." *Smith v. UHS of Lakeside, Inc.*, 439 S.W.3d 303, 316 (Tenn. 2014).

We find no fault in the trial court's adoption of the prevailing party's proposed order in this instance. The written order accurately reflects the court's bench ruling. The oral ruling was expressly incorporated in the written order. And any discrepancies between the written order and the court's oral statements are minor. To the extent that the written order contains findings not explicitly made by the court at the conclusion of the hearing, the findings do not contradict the court's statements from the bench. And we find no indication in this record that the trial court failed to exercise its own independent and deliberate decision making.

### B.

### 1. Liability

Turning to more substantive concerns, we next address the Water Authority's challenge to the trial court's finding of liability. Because this was a bench trial, our review is de novo on the record with a presumption that the trial court's factual findings are correct, unless the evidence preponderates against those findings. Tenn. R. App. P. 13(d). Evidence preponderates against a finding of fact if the evidence "support[s] another finding of fact with greater convincing effect." *Rawlings v. John Hancock Mut. Life Ins. Co.*, 78 S.W3d 291, 296 (Tenn. Ct. App. 2001). Our review of the trial court's conclusions of law is de novo with no presumption of correctness. *Kaplan v. Bugalla*, 188 S.W.3d 632, 635 (Tenn. 2006).

The Water Authority's liability is governed by the Governmental Tort Liability Act. *See* Tenn. Code Ann. § 29-20-102(3)(A) (Supp. 2019). The GTLA removes sovereign immunity "for any injury caused by the dangerous or defective condition of any . . . public improvement owned and controlled by such governmental entity." Tenn. Code Ann. § 29-20-204(a) (2012); *see also Curry v. City of Hohenwald*, 223 S.W.3d 289, 295 (Tenn. Ct. App. 2007) (In the case of a water meter, "it is the duty of [the government] to maintain the water meter and not the landowner."). But immunity is only

removed if the governmental entity had actual or constructive notice of the defective condition. Tenn. Code Ann. § 29-20-204(b). This section of the GTLA essentially codifies the common law of premises liability. *Fowler v. City of Memphis*, 514 S.W.3d 732, 737 (Tenn. Ct. App. 2016).

The Water Authority argues that the trial court erred in finding that it had notice of the dangerous or defective condition of Mr. Cox's meter box.[3] Notice is a question of fact. *See Hawks v. City of Westmoreland*, 960 S.W.2d 10, 15-16 (Tenn. 1997). Our supreme court has defined actual notice as "knowledge of facts and circumstances sufficiently pertinent in character to enable reasonably cautious and prudent persons to investigate and ascertain the ultimate facts." *Kirby v. Macon Cty.*, 892 S.W.2d 403, 409 (Tenn. 1994).

On this record, we cannot say that the evidence preponderates against the trial court's notice finding. The field supervisor acknowledged that a meter box without a structurally sound inner lip was dangerous. And four months before the accident, he recognized that the meter box was damaged and submitted a work order to replace it. A damage report to a governmental entity is generally sufficient to provide actual notice of a dangerous or defective condition. *See, e.g., Curry*, 223 S.W.3d at 291, 295 (recognizing that city had notice of defective condition when landowner complained that lid to water meter was broken); *Lindgren v. City of Johnson City*, 88 S.W.3d 581, 585 (Tenn. Ct. App. 2002) (finding that city had notice of dangerous condition of sewer cover after surveyor made phone call about the cover's condition). Although the field supervisor maintained that he did not submit the work order for safety reasons, the court did not credit the field supervisor's testimony on this point. *See Richards v. Liberty Mut. Ins. Co.*, 70 S.W.3d 729, 733-34 (Tenn. 2002) (("[F]indings with respect to credibility and the weight of the evidence . . . may be inferred from the manner in which the trial court resolves conflicts in the testimony and decides the case."). We will not second guess the court's credibility determination. The trial court, unlike this Court, had the opportunity to examine the damaged meter box and to observe the witness's testimony.

Despite notice of the defective or dangerous condition of the meter box, the Water Authority did not replace the box during the following four months. The proof supports a finding that the Water Authority was liable for Mr. Cox's injuries.

---

[3] The Water Authority also contends that "[t]o whatever, if any, extent that the Court based liability on a finding that the defendant created the dangerous condition, this finding was in error." As the trial court did not rule on this basis, we do not consider this additional argument.

2. Comparative Fault

The Water Authority also questions the trial court's allocation of fault.  We review a trial court's allocation of fault de novo upon the record with a presumption of correctness.  *Cross v. City of Memphis*, 20 S.W.3d 642, 645 (Tenn. 2000).

The evidence does not preponderate against the trial court's decision to allocate 100% of the fault to the Water Authority.  At trial, the Water Authority attempted to establish Mr. Cox's fault by proving that he had driven over the water meter box in his truck.  Mr. Cox denied the allegation.  And the trial court found that Mr. Cox was a "very credible" witness.  We give a great amount of deference to the trial court's credibility determinations.  *C & W Asset Acquisition, LLC v. Oggs*, 230 S.W.3d 671, 676 (Tenn. Ct. App. 2007).

3. Damages Award

Finally, the Water Authority takes issue with the amount of the trial court's non-economic damages award.  The amount of damages is a question of fact.  *Memphis Light, Gas & Water Div. v. Starkey*, 244 S.W.3d 344, 352 (Tenn. Ct. App. 2007).  We presume the amount awarded was correct unless the evidence preponderates against it.  *Id.*

Contrary to the Water Authority's argument on appeal, we do not find the damage award to be speculative.  "[S]peculative damages are prohibited only when the existence, not the amount, of damages is uncertain."  *See Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 703 (Tenn. Ct. App. 1999).  Here, the trial court awarded Mr. Cox $62,500 for pain and suffering, permanent impairment, and loss of enjoyment of life.  "[E]ach of these types of damages are separate and distinct losses . . . ."  *Id.* at 715.  And there is ample basis in this record to award Mr. Cox these types of damages.

The Water Authority also contends that Mr. Cox failed to prove his damages with reasonable certainty.  The Water Authority misapprehends the plaintiff's burden of proof here.  Non-economic damages are "highly subjective."  *Dedmon*, 535 S.W.3d at 438.  So while the award must be supported by "some evidence," plaintiffs are not required to establish a specific monetary value.  *Id.*  Given the difficulty in assigning a monetary value to non-economic damages, we afford the trier of fact broad latitude.  *Id.*  Mr. Cox testified about the difficulties he has faced since the accident.  In addition to pain and suffering, he has developed a permanent limp which has limited his ability to enjoy his former activities.  The evidence in this record does not preponderate against the amount of the non-economic damages award.

**III.**

The trial court did not abuse its discretion by striking the Water Authority's motion for summary judgment, relying on Dr. Terry's deposition, or adopting a party-prepared judgment. And the evidence does not preponderate against the trial court's liability determination, allocation of fault, or award of damages. So we affirm the judgment of the trial court and remand this case for further proceedings as may be necessary and consistent with this opinion.

_____
W. NEAL MCBRAYER, JUDGE